UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.: 1:20-cv-22603-GOODMAN

ERIK CHAVEZ, individually, and
on behalf of others similarly situated,

       Plaintiff,

vs.

GRILL ENTERPRISES, LLC, a
Florida Limited Liability Company, d/b/a
Los Parrilleros and Parrilleros Tavern, and
RUBEN SIERRA, individually,

       Defendants.
_____/

**DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION IN LIMINE (ECF NO. 138)**

Defendants, GRILL ENTERPRISES, LLC, and RUBEN SIERRA, individually, by and through the undersigned counsel, and pursuant to the Court's "Order Specially Setting Civil Jury Trial …" (ECF No. 130), hereby file this Response to Plaintiffs' Motion in Limine (ECF No. 138), and state as follows:

**I. Lay Trial Witnesses.**

Plaintiffs' motion in limine argues that at some point in time in the past, Defendants created a rough draft witness list that listed 78 witnesses and that this Court must now enter an order that many of those witnesses cannot be permitted to testify. But Plaintiffs also acknowledge in their motion that the final witness list (and the only witness list filed with the Court) only listed only 34 witnesses (ECF No. 81-3). Essentially, Plaintiffs are asking the Court to strike witnesses from an old rough draft witness list, that was never filed with the Court, and preclude people who are not on Defendants' current witness list from testifying. To the extent Plaintiffs are asking that the Court

enter an order striking witnesses who are not on Defendants' witness list (ECF No. 81-3), the motion should be denied.

Plaintiffs also claim that Defendants' current witness list (ECF No. 81-3) contains 34 witnesses whereas Defendants' interrogatory responses contain only 25 witnesses. This is not true. First, the witness list actually contains only 29 named witnesses (not 34)(Id.). The additional 5 "witnesses" are:

30. Any witnesses listed by Plaintiffs or Defendants

31. Any rebuttal or impeachment witness

32. Any witness identified in Plaintiffs' responses to Defendants' discovery requests

33. Any witness identified in Defendants' responses to Plaintiffs' discovery requests

34. Any witness identified during depositions taken in this case

Notably, these standard type "witnesses" are routinely included on trial witness lists in this jurisdiction and, in fact, are also contained on *Plaintiffs' own witness list*, which includes the following similar "witnesses":

- Any witnesses listed by Defendants

- Any rebuttal or impeachment witnesses

- Any witness identified in Defendants' responses to Plaintiffs' discovery requests

- Any witness identified in Plaintiffs' responses to Defendants' discovery requests

- Any employee or non-employee "contractor" of the Defendants who participated in the "tip pool"

- Any witness identified during the depositions taken in the case

See ECF No. 81.1 (Plaintiffs' witness list). Defendants should not be precluded from calling witnesses identified on Defendants' witness list where Defendants have identified the witnesses in the same manner that Plaintiffs have identified witnesses on their own witness list. If Plaintiffs can identify witnesses as "rebuttal" witnesses or "impeachment" witnesses, then so can Defendants. If Plaintiffs can identify witnesses by reference to deposition transcripts or the discovery responses of either party, then so should Defendants. If such "witnesses" are to be stricken from Defendants' witness list, then they must be stricken from Plaintiffs' witness list as well.

With only one exception, all other witnesses listed on Defendants' witness list (ECF No. 81-3) are identified in Defendants' original or supplemental answer to Interrogatory No. 13. The only exception is Cesar Pacheco/ VIP Crew. Cesar Pacheco/ VIP Crew became a significant issue for Plaintiffs in this case after U.S. Magistrate Judge Goodman's Discovery Order was entered on June 17, 2021. It was not until several weeks later on July 8, 2021, that Plaintiffs served a 3rd Request for Production of Documents specifically requesting documents pertaining to "Cesar P." and VIP Crew. Defendants served their response to the discovery request on August 9, 2021, which was again long after Magistrate Judge Goodman's Discovery Order. Because Plaintiffs' discovery concerning what has been determined to be Cesar Pacheco (i.e. "Cesar P.") and VIP Crew was not served until after the discovery dispute concerning Interrogatory #13, and the significance of Cesar Pacheco/ VIP Crew to Plaintiffs was not known to Defendants until after Magistrate Judge Goodman's Order, it was not determined that he would be a witness in this action until after the original and supplemental responses to Interrogatory #13 were served.

Also, it is notable that Cesar Pacheco by the names of "VIP Crew" and "Cesar LNUK" is listed as a witness on Plaintiffs' witness list not just once, but twice (see ECF No. 81-1). Because Plaintiffs have Cesar Pacheco on their own witness list, they cannot claim that there is any prejudice

3

in allowing Defendants to call the witness at trial.

## II. Expert Witnesses and Testimony.

Plaintiffs' motion in limine seeks to exclude expert testimony at trial. However, as pointed out by Plaintiffs in their motion, Defendants have not listed any expert witnesses on its trial witness list (ECF No. 81-3) nor have Defendants otherwise identified any experts or given any notice of experts testifying in this case. Therefore, Plaintiffs' motion in limine must be denied.

Plaintiffs' motion goes on to make an argument that Defendants may attempt to introduce expert testimony through lay witnesses, but Plaintiff does not identify the lay witnesses at issue. Plaintiffs' motion also argues that the lay witness testimony may be based on hearsay or other inadmissible evidence, but does not disclose which witnesses, nor what hearsay or inadmissible evidence, Plaintiff is concerned about. To the extent that the motion in limine is based on unidentified witnesses and/or unidentified hearsay or other evidence, without specifying same, Defendants cannot be expected to intelligently respond to the motion and the motion must be denied.

Reading between the lines, what Plaintiffs seem to be attempting to do here is preclude Defendants from offering a defense. Plaintiffs are seemingly attempting to preclude either the use of Plaintiffs' payroll records and paystubs, or Defendants' testimony concerning those records at trial. As Plaintiffs are aware, Defendants contend that the payroll records and paystubs irrefutably show that Plaintiffs were, in fact, paid the minimum wage during "Phase I." The evidence that Plaintiffs were paid the minimum wage includes Plaintiff's payroll records and paystubs. But since the inception of this case, Plaintiffs have contended that paychecks for net zero dollars violate the FLSA, regardless of why the paychecks are for net zero dollars. In this case, Plaintiffs seek to preclude any explanation of why the paychecks were for net zero dollars, as if the mere fact that

4

they were for net zero dollars is a *per se* violation of the FLSA and no further explanation is required. Plaintiffs even go so far as to argue that employers are not allowed to withhold taxes from employees' wages, and to do so violates the FLSA, if it reduces the employee's wage to net zero dollars. Of course, this is not the law and has been briefed extensively throughout the course of this case. But, for purposes of this motion in limine, Defendants feel compelled to repeat those arguments again since Plaintiffs are seemingly attempting to preclude payroll evidence, paystubs, and testimony concerning those payroll records and pay stubs at trial.

It has always been Defendants' contention that Plaintiffs were paid the federal tip credit minimum <u>gross</u> wage for all of the hours that they worked. The only reason that Plaintiffs' pay stubs during Phase I reflect pay of <u>net</u> zero dollars ($0.00) is because, as is common with tipped employees, the hourly wages they earned went to pay taxes on (1) not only the hourly minimum wages paid to them by Grill Enterprises, but also (2) the cash tips they earned and took home with them in cash each night, as required. Statutory withholdings, as shown on Plaintiffs' paystubs, were withheld from Plaintiffs' earnings to account for taxes owed by Plaintiffs on <u>both</u> (1) the hourly minimum wages paid to them by Grill Enterprises and (2) the cash tips retained by Plaintiffs, which Plaintiffs took home with them each night.

The record in this case established that all of Chavez's and Diaz's paystubs were in the same form each and every week that they worked at Grill Enterprises. ECF No. 96, ¶¶26, 30-45, 96-3.A (Chavez paystubs) and 96-3.B (Diaz paystubs). The paystubs all clearly show the reduced tip credit minimum wage paid to Chavez and Diaz, the tip credit taken by Grill Enterprise, and the tips received by Chavez and Diaz. *Id.* The paystubs of Chavez and Diaz also all show the minimum wage that was paid as <u>gross</u> wages to Chavez and Diaz. ECF No. 96, ¶33, 96-3.A (Chavez paystubs) and Ex. 96-3.B (Diaz paystubs). For example, on the paystub for the pay

period ending July 4, 2018, the pay stub shows that Chavez was paid $5.23 per hour. ECF No. 96, ¶34 and 96-3.A (Chavez paystubs), P. 47 (example attached as Exhibit 1). Likewise, on the paystub for the pay period ending July 18, 2018, the paystub shows Diaz was paid $5.23 per hour. ECF No. 96, ¶35 and 96-3.B (Diaz paystubs), P. 36 (example attached as Exhibit 2).

While Plaintiffs currently deny understanding why their paychecks were for net zero dollars ($0.00) and that their wages went to pay taxes they owed to the federal government on (1) their wages; and (2) the cash tips they took home each shift, in their deposition they expressed an understanding. Chavez and Diaz were aware that they were required to pay taxes on their wages and also on their cash tips that they had taken home with them each shift. Even when Chavez took his tips home in cash at the end of each shift, the tips he received were included on his W-2. ECF No. 96, ¶43. As explained by Chavez himself, he understood that his paychecks were for zero dollars because he was paying taxes on the cash tips he received. ECF No. 96, ¶43. Chavez understood that he was paying taxes on the cash tips he received, not Grill Enterprises. *Id*. Likewise, Diaz was aware that he owed taxes and that the restaurant was paying taxes to the federal government based on his written reports of tips received that provided to Grill Enterprises. ECF No. 96, ¶43.

In fact, Chavez admits that Grill Enterprises explained to him that his paychecks were for net zero dollars because his wages went to pay the taxes he owed on the cash tips he took home each shift. ECF No. 96, ¶44. Diaz claims that although the net zero paychecks were discussed at the restaurant, he still did not understand. However, Diaz never asked anybody at Grill Enterprises to explain to him why his paystub had a zero balance. ECF No. 96, ¶44. Even after the change in January 2019 (Phase II), when Grill Enterprises began paying servers their wages and tips by check, rather than allowing servers to take their tips in cash at the end of each shift,

Chavez understood that Grill Enterprises was withholding taxes to pay to the federal government based on his gross pay, including both wages and tips. ECF No. 96, ¶45.

It is impossible for Plaintiffs to argue that they do not understand why their checks were for net zero dollars ($0.00) or negligible amounts when the math and calculations were set forth right on their paystubs. The paystubs of Chavez and Diaz all show the statutory deductions and withholdings that Grill Enterprises deducted from Chavez's and Diaz's wages and paid to the federal government. ECF No. 96, ¶39 and 96-3.A (Chavez paystubs) and 96-3.B (Diaz paystubs). The statutory deductions were explicitly for Federal Income Taxes, Social Security and Medicare. ECF No. 96, ¶40. The statutory deductions were paid to the federal government, on behalf of Chavez and Diaz, by Grill Enterprises. *Id.* Diaz even admitted he has no reason to believe that Grill Enterprises did not pay the statutory deductions to the federal government. ECF No. 96, ¶40.

For example, for the pay period ending July 4, 2018, when Chavez's net pay was zero dollars ($0.00), the pay stub shows under the "Earnings" section that Chavez worked 69.35 hours and was paid $5.23 per hour, or a gross amount of $362.70. The paystub also shows under the "Earnings" section that Chavez received cash tips that week of $1,669.23 (which he took home with him, in cash, each shift). Finally, under the "Statutory Deductions" section, the paystub shows that Grill Enterprises withheld exactly $362.70 as taxes (Federal Income Tax of $207.26, Social Security of $125.98 and Medicare of $29.46) on the $2,031.93 in gross wages and tips earned by Chavez, thereby explaining why Chavez's check was for net zero dollars ($0.00). ECF No. 96, ¶41 (example attached Exhibit 1).

Likewise, for Diaz, for the pay period ending July 18, 2018, when Diaz's net pay was a mere $32.77 dollars, the pay stub shows under the "Earnings" section that Diaz worked 69.61

hours and was paid $5.23 per hour, or a gross amount of $364.06. The paystub also shows under the "Earnings" section that Chavez received cash tips that week of $1,385.59 (which he took home with him, in cash, each shift). Finally, under the "Statutory Deductions" section, the paystub that Grill Enterprises withheld $331.29 as taxes (Federal Income Tax of $197.44, Social Security of $108.48 and Medicare of $25.37) on the $1,749.65 in gross wages and tips earned by Diaz, thereby explaining why Diaz's paycheck was for only $32.77 (example attached Exhibit 2). ECF No. 96, ¶42 and 96-3.A (Chavez paystubs) and 96-3.B (Diaz paystubs).

Every single paystub of Chavez and Diaz during Phase I follows the same pattern as above. Every single paystub shows (1) the gross minimum wages Plaintiffs earned (hours worked x minimum wage), (2) the tips they took home in cash that week (which were taken home in cash and not taxed yet (see Section II, *infra*, for further explanation), (3) the taxes that they owed on those wages and tips, (4) the withholdings calculated and deducted by ADP to pay to the U.S. government, and (5) the resulting balance, which was understandably often for net zero ($0.00) dollars. ECF No. 96-3.A (Chavez paystubs) and 96-3.B (Diaz paystubs). This is how it works in the restaurant industry and anyone who has ever worked in the industry and took their tips home in cash at the end of their shifts knows this. In any event, and for purposes of this motion, this is how payroll worked at Grill Enterprises and it is perfectly legal and legitimate.

Defendants intend to prove that the Plaintiffs were paid the minimum wage for every hour worked, including during Phase I, and will do so by use of Plaintiff's payroll records. This does not amount to "forensic accounting testimony" at all and is easily able to be explained by lay witnesses. This is not expert testimony, rather, it will be testimony from witnesses who were involved with and/or understand how payroll was processed at Defendants' restaurant.

**III.** **Charge of Discrimination.**

Plaintiffs' motion in limine seeks to exclude Plaintiff Erik Chavez's charge of discrimination from evidence at trial. It is true that Defendants originally listed Plaintiff Chavez's Charge of Discrimination pertaining to national origin discrimination as an exhibit (ECF No. 81-2, Exhibit #15). However, that exhibit list was filed prior to the previously set trial of this case when Plaintiff Chavez still had an FLSA retaliation claim pending. After the filing of that exhibit list, Plaintiff's FLSA retaliation claim was dismissed by the Court on summary judgment (ECF No. 116), and therefore Defendants do not need to use the Charge of Discrimination as an exhibit. Plaintiffs are aware that this exhibit was only necessary in relation to the FLSA retaliation claim (ECF No. 82, Pgs 2-3) and that Plaintiff's FLSA retaliation claim was dismissed (ECF No. 116). Thus, this is a non-issue as Defendants do not intend to use the Charge of Discrimination as an exhibit and Plaintiffs' motion in limine must be denied.

### IV. Hearsay Statements.

Plaintiffs' motion in limine contends that Defendants will try to introduce hearsay testimony regarding out of court statements made by "various people." The only example provided is Ruben Sierra's anticipated testimony that he personally provided verbal notice to employees, including Plaintiffs, of an intent to take the tip credit. Plaintiffs argue that these statements by Mr. Sierra should be excluded because (1) they are hearsay; and (2) there is no "evidence in the record" other than the statements by Ruben Sierra that he provided this notice verbally to Plaintiffs and others.

First of all, to be clear, verbal notice of an intent to take the tip credit is sufficient to meet the statutory prerequisite of providing notice to ripped employees before taking the tip credit. There is no requirement that notice be in writing or in any other form. Notifying employees orally is more than sufficient. See e.g. U.S. Department of Labor Fact Sheet #15 (attached as Exhibit 3)("Employers may provide oral or written notice to tipped employees informing them of items 1-5

above."). That said, if verbal notice is sufficient, and if Defendants contend that this FLSA prerequisite was satisfied verbally, Defendants cannot be precluded from introducing testimony at trial from the person who provided the verbal notice and witnesses at the meeting who witnessed the verbal notice. To do so would be reversible error.

Additionally, Ruben Sierra's anticipated testimony at trial that he verbally notified employees including Plaintiffs of the tip credit is not hearsay at all. It is not offered for the truth of the matter asserted. It is not offered to prove that Defendants actually took the tip credit. It is only offered to prove that Defendants provided verbal notice to employees, including Plaintiffs, of the tip credit, as required by the FLSA and refute Plaintiffs' contention that they were never notified that Defendants were availing themselves of the tip credit provisions of the FLSA. See Rule 801(c)(2) and 801(d)(1)(B). Fed.R.Evid.

As a secondary basis to exclude Ruben Sierra's testimony that he verbally notified employees of the tip credit, Plaintiffs argue that (according to Plaintiffs) there is no *other* evidence proving that Ruben Sierra made these statements and provided employees with verbal notice of the tip credit. First of all, even if it were true that there is no *other* evidence, that is not a reason to exclude the testimony. Testimony can be presented at trial even if there is no *other* evidence corroborating the testimony. The testimony is itself the evidence, and can stand alone, particularly in this case where there could be no other "evidence" of verbal notice to employees other than testimony concerning the verbal notice. Also, Defendants contend that there is corroborating evidence in this case because: (1) Defendants anticipate that other witnesses on Defendants' witness list (who Plaintiff chose not to depose) will corroborate that Ruben Sierra provided this verbal notice to Plaintiffs and other employees; and (2) Defendants will provide exhibits, including Plaintiff's own payroll records, corroborating that Plaintiffs were notified of the tip credit on each

and every paystub they received during their employment. See Exhibits 1 and 2 (payroll records exemplars showing the tip credit taken on Plaintiffs' pay stubs).

Dated this 1st day of April, 2023.

>Respectfully submitted,
>
>TODD W. SHULBY, P.A.
>Todd W. Shulby, Esq.
>1792 Bell Tower Lane
>Weston, Florida 33326
>Telephone: (954) 530-2236
>Facsimile: (954) 530-6628
>E-mail: tshulby@shulbylaw.com
>Counsel for Defendants
>
>By:   /s/Todd W. Shulby, Esq.
>      Florida Bar No.: 068365

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on April 1, 2023, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following: Anthony F. Sanchez, Esq.

I HEREBY CERTIFY that on April 1, 2023, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system and will mail a copy of the foregoing and notice of electronic filing to the following non-CM/ECF participants: None.

>By:   /s/Todd W. Shulby, Esq.
>      For Todd W. Shulby, P.A.