UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

Case No.: 1:20-cv-22603-GOODMAN
[CONSENT]

**Erik Chavez**, individually, and on behalf of others similarly situated,

    Plaintiff,

vs.

**Grill Enterprises, LLC**, a Florida limited liability company, d/b/a "Los Parrilleros" and "Parrilleros Tavern", and;
**Ruben Sierra,** individually,

    Defendants.

### PLAINTIFFS' RESPONSE IN OPPOSITION TO "DEFENDANTS' MOTION IN LIMINE" [ECF NO. 137]

Plaintiffs, Erik Chavez and Leonel Diaz, by and through undersigned counsel and pursuant to the Court's "Order Specially Setting Civil Jury Trial . . ." [ECF No. 130], hereby file their response in opposition to "Defendants' Motion in Limine" [ECF No. 137], as follows:

### RESPONSE TO "PRELIMINARY STATEMENT"

The Plaintiffs seek relief under the Fair Labor Standards Act ("FLSA") and the Florida Minimum Wage Act ("FMWA") for their undisputed contention that, for a period a years, they labored under a pay plan by which their employer did not pay them any wages at all, but rather, compensated them by returning to them portions of the tips they had received from customers of the Defendant restaurant. Additionally, Plaintiffs maintain that throughout their employment they were required to subsidize their employer's wage obligations by requiring that they contribute to a tip pool through which the employer diverted tips earned by the Plaintiffs to make payments to

other laborers who were not employees of the restaurant and not lawfully permitted to work in the restaurant because of their immigration statuses.

To overcome the Plaintiffs' allegations, the Defendants argue against their own records that they actually did pay the Plaintiffs a reduced hourly wage applicable to tipped employees, because they withheld taxes from the Plaintiffs' earnings and tips in an amount exactly equal to the hourly wages owed. In other words, Defendants seek to somehow establish the payment of wages to the Plaintiffs with evidence of supposed tax records reflecting the amounts withheld and paid to taxing authorities on behalf of the Plaintiffs. Defendants seek to do this notwithstanding the fact that it is a clear finding of the Court that Defendants controlled the redistribution of tips collected back to the Plaintiffs, and that they withheld far less than they were required to withhold in order to comply with their tax withholding obligations. However, the Defendants file their Motion in Limine [ECF No. 137] seeking to prevent the Plaintiffs from introducing into evidence any of the Defendants' tax records.

Similarly, with respect to the unlawful subsidization of the Defendants' wage obligations through an invalid tip pool, Defendants maintain that they are permitted to divert Plaintiffs' tip earnings by a mandatory contribution into the hands of persons who do not appear as employees in the Defendants own payroll tax returns, and whom the Defendants purportedly compensated by making payments to fictitious corporations listed as wage-earners rather than by their natural names. However, the Defendants seek to exclude evidence of this practice of funneling payments to laborers of its restaurant who are not documented employees through fictitious corporations, and further seek to exclude evidence that its operations were carried out largely through use of unlawful and undocumented laborers.

For the reasons set forth below, the Plaintiffs maintain that Defendants have made their financial practices and conditions necessary fact issues in this case and that, accordingly, tax records and other financial applications and instruments are clearly admissible evidence which must not be excluded by the Court. Likewise, the Defendants' practice of using an undocumented labor force which they require their actual tipped employees to subsidize, is also clearly admissible under the facts of this case.

## RESPONSE TO "LEGAL STANDARD"

In order to prevail on a motion in limine, the moving party bears "the burden of demonstrating that the evidence is inadmissible on any relevant ground," *United States v. Gonzalez*, 718 F. Supp. 2d 1341, 1345 (S.D. Fla. 2010). To be granted, a motion in limine must be directed to *specific* items of evidence. *Holley v. Carnival Corp.*, No. 20-CV-20495, 2021 WL 5299836 (S.D. Fla. Nov. 15, 2021), at *4 ("To be appropriate, motions in limine should address specific pieces of evidence that are inadmissible on any relevant ground." (emphasis in original)); *Mowbray v. Carnival Corp.*, No. 08-20931-CIV, 2009 WL 10667070 (S.D. Fla. Apr. 13, 2009), at *2; *A.T.O. Golden Constr. Corp. v. Allied World Ins. Co.*, No. 17-24223-Civ, 2018 WL 5886663, at *7 (S.D. Fla. Nov. 9, 2018) ("The movant has the burden of demonstrating that the evidence is inadmissible on any relevant ground." (citation and quotation marks omitted)); *Southpoint Condo. Assoc., Inc. v. Lexington Ins. Co.*, No. 19-cv-61365, 2020 WL 3547028, at *4 (S.D. Fla. June 30, 2020) (same).

The Defendants' Motion in Limine fails because it neither provides any legal basis in support of the inadmissibility of even the broad evidentiary topics they seek to exclude, and because it is not directed to the exclusion of any specific evidence which Defendants maintain to be inadmissible. The only vague legal premise for the Defendants' Motion is their bare assertions that financial records and immigration/"contractor" records will create confusion or unduly

prejudice the Defendants. Defendants fail to detail why their unlawful pay practices are not relevant to the Plaintiffs' claims that they were unlawfully paid, nor do the Defendants explain how they are *unduly* prejudiced by evidence of their unlawful pay practices.

**I.  Response to Defendants' Attempt to Exclude "Evidence of Undocumented Workers and Independent Contractors."**

Defendants' own "Tip Pool Calculations" during Phase II consistently reflect tip pool payments made to a person named "Cesar" [ECF No. 97, pp. 10-11, ¶ 29-29b]; however, the name "Cesar" does not appear in pay or time-keeping records produced by Defendants, nor does the name appear in any of the "Employer's Quarterly Report[s]" wherein Defendants reported wages paid to employees by name during applicable periods [*See* ECF Nos. 98-8; 99-8]. Notwithstanding their own pay and timekeeping records, and their own tax reporting of wages paid to employees, Defendants offer only their own self-serving, conclusory, hearsay statements in support of the idea that "Cesar" **_was_** nevertheless an employee (a "dishwasher/busser"). However, they maintain he worked during both Phases I and II as both a dishwasher and a busser, but that he would be paid inexplicably under the fictitious moniker "VIP Services" [ECF No. 96-3, pp. 2-3, ¶¶ 14-20; ECF No. 96-4, pp. 2-3, ¶¶ 12-18]. Further, in their motion *in limine*, and in proposed jury instructions, Defendants also clearly suggest: i. that "Cesar" was an undocumented worker; ii. that they used "undocumented workers", and; iii. that Defendants' practice of using undocumented workers should be excluded from evidence (ECF No. 82, p.4, ¶¶4-5; ECF No. 84, p.55: 1-2). Defendants even suggest (in their original proposed jury instructions), without authority, that they should be permitted to divert the tips earned by their employees to underwrite the payment of wages to "undocumented aliens" hired by Defendants. (ECF No. 84, p. 55, proposed Instruction 28b). There is no authority in support of the proposition that Defendants may use their lawful employees' tips to subsidize payment to undocumented workers of the Defendants. This is contrary to logic and

4

established authority. Indeed, Defendants may not use employee tips for any purpose. 29 U.S.C. §203(m)(2)(B) ("An employer may not keep tips received by its employees for any purposes…"). Moreover, it is unlawful for employers to knowingly hire undocumented workers or to hire any individual without verifying their eligibility for employment. *Hoffman Plastic Compounds v. Nat'l Labor Relations Bd.*, 535 U.S. 137, 141 (2002); 8 U.S.C. § 1324a (a), (b), (h)(3). Employers are solely liable for the payment of wages to undocumented workers they hire unlawfully. *Id*. see also *INS* v. *National Center for Immigrants' Rights, Inc.*, 502 U.S. 183, 194, and n. 8 (1991); *Patel v. Quality Inn South*, 846 F.2d 700, 704-05 (11th Cir. 1988). Holding employers who violate immigration laws and federal employment law liable for both violations advances the purpose of federal immigration policy by "offset[ting] what is perhaps the most attractive feature of [unauthorized] workers – their willingness to work for less than the minimum wage." *Patel v. Quality Inn South,* 846 F.2d 700, 704 (11th Cir. 1988). See also *Sure-Tan,* 467 467 U.S. 883, 893 (1984) and *Lucas v. Jerusalem Cafe, LLC*, 721 F.3d 927, 936 (8th Cir. 2013). There is no evidence to support the idea that "Cesar" was a lawful employee of the Defendants, let alone an employee eligible to participate in a valid tip pool. There is also no reason to believe that he would be the *only* undocumented employee since there are numerous corporate monikers listed in lieu of actual individuals in the Defendants' own timekeeping records.

  The Defendants maintain that the "only person Plaintiff has identified and argues was an independent contractor and supposedly should not have been part of the tip pool is Cesar Pacheco (a/k/a "Cesar" or "VIP Crew")". [ECF No. 137 p. 2:22-24]. Further they suggest that evidence of all other "independent contractor[s]" should be excluded. This argument puts the cart before the horse. It is the Defendants who have a legal obligation to ensure that the people who work in their restaurant are eligible to work in this country. It is also their obligation to maintain the types of

5

records from which to demonstrate that they complied with their statutory wage obligations. 29 U.S.C. § 211(c); *Anderson v. Mt. Clemons Potter Co.*, 328 U.S. 680, 687 (1946). It is farcical for the Defendants to suggest that Plaintiffs have failed to document the existence of more than one undocumented laborer at the restaurant. Obviously, this scheme to hide the identity of its labor force through the use of undocumented laborers is designed for the very purpose of secreting the unlawful employment of its workers by failing to document their actual identities. Moreover, for the entirety of Phase I of the Plaintiffs' employment, the employers kept no records and have produced no records by which to identify the *actual* identities of the individuals who participated in its longstanding unlawful tip pool scheme. Thus, the fact that Defendants use fictitious corporate monikers to identify hourly wage workers in their own pay and timekeeping records is clearly relevant to show the motive, intent, knowledge, and opportunity to divert the tips earned by tipped employees into the hands of the Defendants' undocumented workforce. Rule 404(b)(2), Fed. R. Evid.

Each of the named entities, including "VIP Crew" (a/k/a "Cesar") appeared in Defendants' timekeeping records as "employees" paid an hourly wage by Defendants. However, the complete name of "Cesar" was never provided within the discovery period and neither was any contact information provided for him, or any of the other corporate monikers listed as hourly wage earners. Those corporate entities appear in timekeeping records together with other hourly wage employees, but those "names" do not appear in any other payroll records provided by Defendants and Defendants have not provided any information regarding the identity of the "employees" whom they now refer to as "independent contractors". The fact that Defendants utilize corporate monikers as a means to facilitate the use of undocumented individuals as a part of their labor force is and has always been relevant to this case since it is now, apparently, undisputed that at least one

of the individuals (identified only through a corporate moniker) participated in the tip pool. The fact that Defendants' pay practices have obfuscated the ability of the Plaintiffs to know the fictitious corporate moniker that Defendants associate with any specific wage-earner is not a basis for excluding evidence of the fact that the Defendants' pay practices are constructed for the very purpose of obfuscation and deceit.

Evidence of wrongs or other unlawful acts are clearly admissible to prove the motive, purpose, and design of the Defendants' pay practices. See Rule 404(b)(2), Fed. R. Evid. ("This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."). Similarly, and especially in light of the fact that Defendants have indicated an intent to explain away their failure to deliver even a reduced hourly wage to the Plaintiffs through introduction of tax payments which are not even sufficient to meet the employers' withholding obligation, the Defendants' use of undocumented workers is also relevant to impeach the credibility of witnesses attempting to testify contrary to the plain meaning of the Defendants' own pay records.

Defendants recognize that their pay practices are relevant in a case alleging the failure to lawfully pay wages to protected employees, but argue that their pay practices are so confusing that they should be excluded from the jury so that the jury won't be confused. This is a kind of circular reasoning which attempts to prevent the jury from understanding what the Defendants were trying to accomplish when they collected tips from credit card payments but then redistributed them to employees (and non-employees) through cash payments.

**II.     Response to Defendants' Attempt to Exclude "Evidence Concerning Defendants' Finances and/or Income."**

It is clear from the evidence that during Phase I of Plaintiffs' employment, their pay stubs reflected the payment of "net zero" dollars ($0.00) on account of the Plaintiffs' hourly wages earned. Defendants have indicated that this is okay because they compensated the Plaintiffs for those hours by withholding 100% of the hourly wages due during Phase I and then making tax payments to the federal government on account of the same. However, it is clear from Defendants' own admissions that they did not withhold taxes as required by law. Thus, while the Defendants hope to explain the payment of wages through some unexplained tax legerdemain, they seek to prevent the Plaintiffs from introducing Defendants' tax records. This is incongruous, particularly since there are no records demonstrating the actual payment of withholding taxes by the Defendants on an individualized basis.

Moreover, financial records and tax records are relevant in this case for numerous reasons, including the fact that that Defendant Ruben Sierra denies that he has operational control over a closely-held family business of which he is the sole owner and shareholder. Financial documents, including tax returns and PPP loan applications, reflect that they were signed by Defendant Ruben Sierra, who is listed as the sole owner of the Defendant corporation. These facts represent factual findings made in connection with the Plaintiffs' motion for summary judgment. See ECF No. 111, p. 9:1–3. Similarly, RT-6 tax returns requiring employers to list the names and payments made to employees are also relevant because they reflect the absence of workers who appear in timekeeping records under fictitious corporate monikers.

It is a factual finding of the Court that the Defendants controlled the disbursement of tip revenues back to the Plaintiffs. [ECF No. 111, p. 11, n. 16]. There is no reason for the Defendants to have reduced those revenues into cash before delivering them to the Plaintiffs. Therefore, the

Defendants' financial condition is relevant to show that at least during Phase I of the Plaintiffs' employment, the Defendants did not have to reduce payments to tipped employees to cash before handing them over. The Defendants clearly had the financial wherewithal and resources to either write checks on account of earnings or to otherwise disburse wages and tip distributions electronically, as they did at the commencement of Phase II.[1] They did not have to pay in cash. Similarly, since Defendants controlled the collection of tips, Defendants were in a position to properly withhold from the redistribution of those tips amounts representing tax withholdings.

The quizzical aspect of the Defendants' position in this regard is that – notwithstanding the $0.00 paychecks – Defendants maintain they actually paid Plaintiffs' hourly wages through statutory tax withholdings even as they deny withholding. Defendants do not explain why they believe that withholding taxes would obviate their obligation to pay hourly wages. No calculation is provided to justify the way in which, during Phase I – when tips were disbursed by Defendants in cash – the amount Defendants withheld for "taxes" always equaled exactly the amount the Defendants owed on account of unpaid hourly wages. This position is also self-contradicting because while the Defendants recognize both in legal arguments (*See* ECF No. 104, p. 10, n. 2.), and in testimony (*See* Sierra decl., ECF No.103-1, ¶ 25; Carrillo decl., ECF No.103-2, ¶ 21; Gonzalez decl., ECF No.103-3, ¶ 21) that they were required to withhold taxes from the Plaintiffs' tip distributions[2], they maintain that they <u>never</u> actually withheld taxes from the Plaintiffs' tips

---

[1] /   Defendants admit tips were collected via credit card payments payable to Grill Enterprises, and that Defendants then disbursed tips to Plaintiffs in cash. [Sierra decl., ECF No. 103-1, p. 4, ¶ 12]. This is also a finding of the Court for purposes of summary judgment. [ECF No. 111, p. 11, n. 16]

[2] /   Defendants aver under penalty of perjury that because "…Grill Enterprises <u>was required to withhold taxes for the (1) wages and (2) cash tips</u> received by Plaintiffs, their paychecks often were for net $0.00." [*Id.*](emphasis added).

during "Phase I" (*See* Sierra decl., ECF No. 103-1, ¶ 13)[3], even though their own pay records reflect they consistently withheld flat percentages of 20% (sometimes 10%) from Plaintiffs' tips. In other words, Defendants acknowledge that they were required to withhold taxes from the Plaintiffs' tips, that their own pay records reflect disbursement of less than all tips, but then also maintain they never actually withheld taxes from tip distributions as required. The only thing the Defendants maintain they withheld on account of taxes was exactly 100% of the Plaintiffs' hourly wages. The record is completely devoid of any evidentiary suggestion that the Defendants paid Plaintiffs' Phase I wages. Any attempt to prove otherwise would necessarily involve tax records of the Defendants.

## CERTIFICATE OF SERVICE

I hereby certify that on April 3, 2023 a true and correct copy of the foregoing was electronically filed with the Clerk of the Court via CM/ECF and served on the parties listed in the Service List below in the manner indicated therein.

Anthony F. Sanchez, P.A.
Attorneys for Plaintiffs
6701 Sunset Drive, Suite 101
Miami, Florida 33143
Tel.: 305-665-9211

By: /s/ Anthony F. Sanchez
Anthony F. Sanchez
Florida Bar No. 789925
afs@laborlawfla.com

---

[3] / Defendants also aver: "Grill Enterprises did not retain or withhold 20% of Plaintiffs' tips for statutory deductions." [*Id.*].

**SERVICE LIST**

| | |
|---|---|
| Anthony F. Sanchez, Esq. | Todd W. Shulby, Esq. |
| Florida Bar No.: 789925 | Florida Bar No.: 068365 |
| afs@laborlawfla.com | tshulby@shulbylaw.com |
| faz@laborlawfla.com | llangford@shulbylaw.com |
| ***Counsel for Plaintiffs*** | ***Counsel for Defendants*** |
| ANTHONY F. SANCHEZ, P.A. | TODD W. SHULBY, P.A. |
| 6701 Sunset Drive, Suite 101 | 1792 Bell Tower Lane |
| Miami, Florida 33143 | Weston, Florida 33326 |
| Tel: 305-665-9211 | Tel: 954-530-2236 |
| | Fax: 954-530-6628 |
| | *Via Notice of Electronic Filing* |