# EXHIBIT "2"

Page 1

1                  UNITED STATES DISTRICT COURT
                    SOUTHERN DISTRICT OF FLORIDA
2                        MIAMI DIVISION
3                   CASE NO:  20-cv-22603-MOC
4       ERIK CHAVEZ, individually and on behalf
        of others similarly situated,
5
                Plaintiff,
6
        vs.
7
        GRILL ENTERPRISES, LLC., a Florida
8       Limited Liability Company d/b/a
        Los Parrilleros and Parrilleros Tavern
9       and RUBEN SIERRA, individually,
10              Defendants.
        _____/
11
                               By Videoconference
12                             April 7, 2021
                               10:04 - 2:00 p.m.
13
14
                    DEPOSITION OF LEONEL DIAZ GONZALEZ
15
16
17
18
19
20
21              Taken on behalf of the Defendants before Karen
22      Ann Smith, RPR, Notary Public in and for the State of
23      Florida at Large, pursuant to Notice of Taking
24      Deposition in the above cause.
25

```
                                                        Page 2

 1   APPEARANCES BY VIDEOCONFERENCE:
 2
         ANTHONY F. SANCHEZ, ESQ.
 3       ANTHONY F. SANCHEZ, P.A.
         6701 Sunset Drive
 4       Suite 101
         Miami, Florida  33143
 5       afs@laborlawfla.com
         Attorney for Plaintiff
 6
 7       TODD W. SHULBY, ESQ.
         TODD W. SHULBY, P.A.
 8       1792 Bell Tower Lane
         Weston, Florida  33326
 9       tshulby@shulbylaw.com
         Attorney for Defendants
10
11   INTERPRETER:  Milagros Buckley
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Page 42

```
 1      translation.  I would say retaliation more than
 2      revenge.
 3          THE INTERPRETER:  Okay.
 4          MR. SANCHEZ:  He also said suspicion of
 5      retaliation.  You can correct me if you take issue
 6      with that.
 7          THE INTERPRETER:  The interpreter is
 8      corrected.  "I would suspect it is retaliation.
 9      Recently I have known."
10      Q.   What happened recently that made you think
11  this was retaliation?
12      A.   A document he had signed a month before I was
13  fired saying about a payment of ours not accounted for
14  and the employment department had investigated.
15          MR. SHULBY:  I'm going to need that answer
16      read back.  Ms. Smith, can you do that for me?
17          THE COURT REPORTER:  Sure.
18          (Thereupon, the portion referred to was read
19  by the reporter as above recorded.)read back
20  BY MR. SHULBY:
21      Q.   When did you sign that document?  Did you say
22  it was one week before you were terminated?
23      A.   No.  It was some months before.
24      Q.   How many months?
25      A.   I don't remember, but it was that year.
```

Page 43

1      Q.    What year was that?

2      A.    2019, the same year I was fired.

3      Q.    What was the date of your termination?

4      A.    I think it was in November or beginning of

5  November.

6      Q.    How much before your termination did you sign

7  that document?

8           THE INTERPRETER:  The interpreter needs

9           repetition of the question.

10     Q.    How many months before your termination did

11  you sign that document?

12     A.    I don't remember it.

13     Q.    Do you have the document?

14     A.    No.

15     Q.    Now, knowing that you signed the document in

16  2019 and you were terminated in 2019, what was it as you

17  say recently that changed your mind about this and makes

18  you think that it was retaliation?

19     A.    When I was made to sign that document a few

20  days before a person that I think was from the

21  employment department started interviewing the employees

22  who were present that day.  He gave me a card and he

23  asked me how many hours did I do per week.  Then I

24  didn't know what the interview was for.  And then a few

25  days later Ruben came to me and asked me to sign a

Page 44

1   document.

2           MR. SANCHEZ:  I think he also said and receive

3       a check.

4           THE INTERPRETER:  Yes, and he gave me a check.

5       Q.   You said -- Strike that.

6           You testified a short while ago that something

7   changed your mind recently that made you think recently

8   that this was retaliation.  What happened recently?

9       A.   A document was shown to me, that precise

10  document shown to me and then I was given that check.

11  After I had signed the document -- A girl, cook had also

12  been given a document and later fired.  And months later

13  after signing the document I was fired, too.

14      Q.   This document was shown to you again recently;

15  is that what you're saying?

16      A.   Yes.

17      Q.   And when that document was shown to you

18  recently, that's what changed your mind and made you

19  believe it was retaliation was the reason for your

20  termination?

21      A.   I was fired without given a reason why.  And

22  then the day before Manager Vanessa had a change of

23  attitude towards me, which I perceived as being hostile,

24  and I didn't understand why.  She would send me home

25  early and would not allow me to finish my shift

```
 1   year before you signed them and filed them with the IRS?
 2        A.   My accountant.
 3        Q.   And if you had any questions, would your
 4   accountant answer those questions for you?
 5        A.   I think so.
 6        Q.   Did you ever ask your accountant any questions
 7   about the issues that are at stake here in this lawsuit
 8   regarding your pay?
 9             MR. SANCHEZ:  Object to form.
10        A.   No.  No.
11        Q.   Did you ever ask your accountant whether the
12   W-2s provided to you by Grill Enterprises were accurate
13   and correct?
14             MR. SANCHEZ:  Object to form.
15        A.   No, I didn't ask.
16        Q.   Now, you were talking about the form that you
17   signed for Grill Enterprises when Ruben Sierra presented
18   it to you and gave you a check.  Do you recall that?
19        A.   Form, no.  Yes, the form in order to receive
20   that check, yes.
21        Q.   And you said you signed that form without it
22   having been translated to you, correct?
23        A.   Uh-huh.  Yes.
24        Q.   And has it been translated to you now?
25        A.   Yes.
```

1      Q.   Who translated it to you?

2           MR. SANCHEZ:   I am going to object to the

3      extent that that question requires - requires him

4      to divulge attorney-client communications.   To the

5      extent that whoever that translated it for him was

6      an attorney or from this office, we would object on

7      the grounds of privilege.   He doesn't have to

8      answer.

9      Q.   Go ahead, Mr. Diaz.

10          THE INTERPRETER:   The interpreter requests

11     repetition of that.

12          MR. SANCHEZ:   Object to form.

13     Q.   Did Mr. Sanchez interpret that form for you?

14          MR. SANCHEZ:   Object to form.   It's

15     privileged.   Move to -- Instruct him that he

16     doesn't have to answer that question.   Attorney-

17     client privilege.

18          MR. SHULBY:   There is nothing privileged about

19     me asking the question of whether or not you

20     interpreted a form for Mr. Diaz.

21          MR. SANCHEZ:   That's a legal conclusion we may

22     have a disagreement about.   If there's case law

23     that says that he can answer that question, that

24     that communication isn't privileged, I'd like to

25     see it and I would reconsider the assertion of a

```
1        privilege or the recommendation that he assert a

2        privilege.

3             MR. SHULBY:  We'll come back and we'll

4        continue Mr. Diaz's deposition at that time because

5        that is surely the case.

6             MR. SANCHEZ:  If that's what you want to do,

7        Mr. Shulby, that's fine.  If that's not a

8        privileged communication, then that will be a yes

9        or no answer.  Until I'm satisfied that it's not

10       privileged, I'm telling him and protecting his

11       right to not answer communications.

12  BY MR. SHULBY:

13       Q.   Mr. Diaz, did anybody besides Mr. Sanchez

14  translate that document to you?

15       A.   No.

16       Q.   Do you agree with the content of that

17  document?

18            MR. SANCHEZ:  Object to form.

19       A.   I don't know what that document is about.  I

20  know that it's an investigation, but I couldn't say

21  whether I am for - whether I am in agreement or not in

22  agreement with it.

23       Q.   You have signed the document and you have now

24  had it translated to you.  Do you disagree with the

25  document?
```

Page 69

1          MR. SANCHEZ:  Object to form.

2      A.   I can't say whether I am in agreement or

3  disagreement if I don't know what the investigation is

4  with that document.

5      Q.   Do you agree you are owed money by Grill

6  Enterprises that was paid to you after signing that

7  document?

8          MR. SANCHEZ:  Object to form.

9      A.   Ruben approached me and asked me to find the

10  document because he has - because he told me - because

11  it was a matter of the hours that they had studied.  He

12  gave me the document.  He said sign it, I am going to

13  give you a check.  He said these are hours that we have

14  studied and that were not paid to you.

15      Q.   I'm sorry.  Go ahead, Mr. Diaz.

16      A.   And after work he did not give me further

17  explanation than that.

18      Q.   And after explaining to you that the check was

19  for hours that you had not been paid for, he gave you a

20  check to pay you for those hours?

21      A.   Is that a question?

22      Q.   Yes.

23          MR. SANCHEZ:  Object to form.

24      A.   What he said, it was something about the hours

25  and at that time I didn't know what it was.

Page 71

```
 1                  CERTIFICATE OF OATH
 2              (VIDEOCONFERENCE PROCEEDINGS)
 3
 4   STATE OF FLORIDA      )
                           ) SS:
 5   COUNTY OF BROWARD     )
 6
 7           I, KAREN ANN SMITH, Registered Professional
 8   Reporter and Notary Public in and for the State of
 9   Florida at Large, certify that the witness, LEONEL DIAZ
10   GONZALEZ, appeared before me via videoconference on the
11   7th day of April, 2021 and was duly sworn.
12           WITNESS my hand and official seal this 30th
13   day of June, 2021.
14
15
                     _____
16                   KAREN ANN SMITH, RPR
                     Notary Public, State of Florida
17                         at Large
18                   Notary #GG979937
19                   My commission expires: 5/23/24
20
21   Produced Identification
22   Type of Identification Produced: FL driver's license
23
24   Job #4512173
25
```