UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

Case No.: 1:20-cv-22603-GOODMAN
[CONSENT]

**Erik Chavez**, individually, and on behalf of others similarly situated,

    Plaintiff,

vs.

**Grill Enterprises, LLC**, a Florida limited liability company, d/b/a "Los Parrilleros" and "Parrilleros Tavern", and;
**Ruben Sierra,** individually,

    Defendants.

**RESPONSE TO "DEFENDANTS' MEMORANDUM ON
THE ADMISSIBILITY OF DOL FORM WH-58" [ECF NO. 159]**

Plaintiffs submit the instant Response to "Defendants' Memorandum on the Admissibility of DOL Form WH-58" [ECF No. 159], as follows:

**PROCEDURAL HISTORY**

1.    The above-captioned case is scheduled to commence jury trial on Monday, May 8, 2023.

2.    **Pretrial Stipulations**. On April 24, 2023, the parties filed their most recent Joint Pretrial Stipulation ("JPS") [ECF No. 144]. The JPS includes respective sections identifying the remaining issues of fact and law upon which there is agreement, and respective sections identifying remaining issues of fact and law which remain to be litigated. There is no issue of law or fact raised in the recent JPS pertaining to any alleged "waiver" or other matter relating to a U.S. Department of Labor ("DOL") supervised settlement of claims. In other words, the parties have already

stipulated that there are no such issues before the Court.[1] Specifically, the remaining issues, in accordance with the JPS, are encapsulated as follows:

    a. **Concise Statement of Uncontested Facts**. The recent JPS at ¶ 5, pp. 3–4, includes 12 uncontested fact issues, but none of them have anything to do with any alleged "waiver" or other matter relating to a "DOL supervised" settlement of claims.

    b. **Concise Statement of Fact Issues which Remain to be Litigated**. The recent JPS at ¶ 6, pp. 4–8, includes 30 contested fact issues, but none of them have anything to do with any alleged "waiver" or other matter relating to a "DOL supervised" settlement of claims.[2]

    c. **Concise Statement of Issues of Law on which there is Agreement.** The recent JPS at ¶ 7, p. 9, includes two (2) uncontested legal issues, but none of them have anything to do with any alleged "waiver" or other matter relating to a "DOL supervised" settlement of claims.

    d. **Concise Statement of Legal Issues which Remain to be Litigated**. The recent JPS at ¶ 8, pp. 9–13, includes 30 contested legal issues, but none of them have anything to do with any alleged "waiver" or other matter relating to a "DOL supervised" settlement of claims.[3]

---

[1] / In the original JPS between the parties [ECF No. 81], the parties had likewise stipulated to the remaining issues of law and fact and no "waiver" or "DOL supervision" issue was listed in that document either.

[2] / Notably, the original JPS which the parties promulgated *before* issues were narrowed by the Court's ruling on motions for summary judgment, listed only 12 contested facts. Thus, while the "narrowing" of issues somehow results in the expansion of contested fact issues, none of the additional contested fact issues relate to "waiver" or "DOL supervision". [ECF No. 81, p. 6, ¶ 3].

[3] / Notably, the original JPS which the parties entered into *before* issues were narrowed by the Court's ruling on cross-motions for summary judgment, listed only six (6) contested legal

3. **Summary Judgment Motions**. Similarly, the parties twice briefed cross-motions for summary judgment without raising any factual or legal issues relating to "waiver" or "DOL supervision" of any kind.

4. Indeed, in connection with those respective cross-motions, Defendant Ruben Sierra, on four occasions, filed declarations; none of them raised any issue of fact or law pertaining to "waiver" or "DOL supervised" settlement of claims. [ECF Nos. 67-3; 73-1; 96-3; 103-1].

5. In responding to interrogatories on behalf of Defendant Grill Enterprises, LLC, Mr. Ruben Sierra, responding to interrogatory #17, stated under penalty of perjury that Defendants had no releases or waivers. See Excerpt of Grill Enterprises, LLC's answers to interrogatories, attached as **Exhibit 1**.

6. Thereafter, following a Court order, Mr. Sierra supplemented the original answers to interrogatories on behalf of Grill Enterprises, but he in no way altered or amended his prior representation that Defendants had no such waivers or releases. Moreover, in supplementing interrogatory answers to interrogatory #13, Mr. Sierra described his knowledge about the facts set forth in the pleadings by listing 19 separate issues of which he had knowledge, but he listed no issues pertaining to any "waiver" or "DOL supervision". See Excerpt of Grill Enterprises, LLC's supplemental answers to interrogatories, attached as **Exhibit 2.**

7. **Pretrial Conference**. On April 26, 2023, the Court held a pretrial conference for this specially-set trial. Undersigned counsel for the Plaintiffs brought to the Court's attention that Defendants had in their proposed exhibit list identified two exhibits which were not pertinent to

---

issues. [ECF No. 81, p. 4, ¶ 8]. Thus, while the "narrowing" of issues somehow results in the expansion of contested legal issues from six (6) to thirty (30), none of the recently added contested legal issues relate to issues of "waiver" or "DOL supervision".

any agreed or disputed issues of law or fact, and which had never, in fact, been raised before by either party.

8. Specifically, Defendants listed the following described trial exhibits, which are not pertinent to any of the stipulated issues of law or fact and which had never been raised before:

    a. Exhibit D15 – "Documents exchanged with the DOL, Wage and Hour Division (as redacted)";

    b. Exhibit D28 – "WH-58 Signed by Diaz".

9. At the time of the Pretrial Conference, neither of the two documents described had ever been made a part of the record in this case by either party, notwithstanding that the salient legal issues were twice fully briefed and litigated, and then ruled upon in the context of cross-motions for summary judgment.

10. Similarly, nothing in the pleadings suggests any defense or disputed issue of fact relating to DOL supervised waivers.

11. During the pretrial conference, Defendants, for the first time, announced their intention to introduce the mentioned exhibits in support of the following two factual or legal issues:

    a. First, Defendants suggested that they relied upon DOL documents as validating their pay practices, and that, accordingly, liquidated damages should not be awarded;

    b. Secondly, Defendants maintain that Plaintiff Leonel Diaz signed a waiver of substantive FLSA rights in connection with a DOL-supervised settlement of claims, and that accordingly, his claims at trial should be reduced by approximately two-years' worth of unpaid wages.

12. During the course of discovery, Defendants produced an assorted mishmash of purported DOL documents, none of the documents they produced are signed by any DOL employee. Neither are any of the documents self-authenticating public records. Neither have the Defendants listed any DOL witness or custodian of records in their trial witness list.[4]

13. In the course of this case, Defendants provided notice of their intent to serve numerous third-party subpoenas, but none of those pertained to the DOL.

14. Thus, it is apparent that Defendants will attempt to introduce evidence of government records which are not mentioned in the pleadings, which are not self-authenticating, and without any custodian of records or other witness from the DOL competent to testify.

15. Following the pretrial conference, the Court issued an Order requiring "Defendants will submit a memorandum of law explaining why the WH-58 form and other documents from the Department of Labor ("DOL") investigation are admissible." [ECF No. 147, p. 4]. Thereafter, Plaintiffs are required to respond . . . no later than Thursday, May 4, 2023. *Id*.

16. Late Tuesday night, May 2nd, Defendants filed their Memorandum regarding the admissibility of DOL documents. However, the only supposed DOL document mentioned in the Memorandum, is a single page purporting to be a fully-executed "U.S. Department of Labor Wage and Hour Division Receipt for Payment of Back Wages, Liquidated Damages, Employment Benefits, or Other Compensation" (a/k/a "Form WH-58").[5]

---

[4] / In Defendants' supplemental answers to interrogatories, they listed only a single entity as having knowledge regarding anything to do with the DOL. Specifically, Mr. Sierra described under oath that the only witness with knowledge of any matter pertaining the DOL was the DOL itself, and described that knowledge as follows: "Knowledge/ Information: It is anticipated that the witness would have information about a prior DOL investigation/ audit of Defendant and its basis, findings, and resolution, including with respect to Leonel Diaz." See **Exhibit 2**, p. 3.

[5] / In their Memorandum, Defendants essentially forfeit any argument pertaining to admissibility of any other DOL document. As such, the Defendants' documents described as

17. In support of the Defendants' Memorandum, Defendants include the "Unsworn Declaration of Ruben Sierra" [ECF No. 159-3, pp. 2–5]. In his Unsworn Declaration, Defendant Sierra attempts to characterize the nature and extent of a DOL investigation as follows:

> *I had communications with the DOL's investigator regarding the nature of the investigation* that was conducted, the findings, and also communications with the DOL and Diaz concerning why I entered into an agreement to pay the wages required by the DOL to employees of Grill Enterprises, LLC, the payment of the wages required by the DOL, and the process by which we confirmed that each affected employee knew of the payment required by the DOL, that each affected employee signed the WH-58 Form, and that all payments required were in fact made.
>
> \* \* \*
>
> *[T]he DOL calculated that overtime wages were not being properly paid* to certain employees because overtime was not calculated weekly. On behalf of Grill Enterprises, LLC, *I agreed to the wages calculated and required by the DOL* to the affected employees, including Diaz, in the manner required by the DOL, and that Plaintiff Diaz was one of the affected employees owed overtime wages. As a result of the DOL investigation, and the small amounts paid under the WH-58, I was under the impression that no payroll changes whatsoever were needed to comply with the FLSA.
>
> \* \* \*
>
> *The DOL provided pre-filled forms* (WH-58 Forms) for each affected employee *and instructed us to have each affected employee sign the appropriate WH-58 Form in order to receive payment and required that we countersign* it as confirmation that each payment was made. The documents appended hereto as Exhibit 1 include the WH-58 Form that Plaintiff Diaz signed (in front of me) and that I countersigned to confirm that payment was made to Plaintiff Diaz as well as documentation of the payment made to Diaz.

ECF No. 159-3, pp. 4–5, ¶¶ 6–8 (emphasis added).

18. It is apparent from the recent Declaration of Ruben Sierra that Defendants will attempt to characterize the nature and scope and conclusions of a DOL investigation, calculations that were prepared by the DOL, which supposedly "required" that payments be made and releases be executed. Mr. Sierra intends to prove all of this without any testimony from the DOL and without any report, finding, summary of wages, or any document signed by a SOL designee.

---

"Exhibit D15" ("Documents exchanged with the DOL, Wage and Hour Division (as redacted)") remain unidentified and should be ruled inadmissible.

19.     Mr. Sierra's Declaration does not detail anything pertaining to discussions he had with Plaintiff Diaz to suggest Diaz would have understood anything contained therein in the form.

20.     Plaintiffs' Response to the Defendants' Memorandum follows.

## MEMORANDUM

**I.      The Form WH-58 cannot be admitted since it is not relevant to any of the stipulated issues of fact or law.**

At the very beginning of the pretrial conference, the Court addressed the lawyers for purposes of confirming that they had reviewed the JPS and that they agreed with it. All three counsel of record indicated that they had. As mentioned above, the recent JPS does not discuss any waiver issue or any matter pertinent to a DOL supervised settlement of claims. Moreover, this case has been litigated for years and briefed several times without any party raising a legal or factual question regarding waivers, settlements, or DOL supervision thereof. It is undisputed that the issue is raised for the very first time at the pretrial conference scheduled less than two (2) weeks before trial. A pretrial stipulation is in the way of a contract; the parties make mutual promises upon which they mutually rely. Plaintiffs maintain that a pretrial stipulation is similar to a settlement agreement between the parties and that they must be enforced. *See Robbie v. City of Miami,* 469 So. 2d 1384, 1385 (Fla. 1985); *Pearson v. Ecological Science Corp.,* 522 F.2d 171 (5th Cir. 1975), *cert. denied,* 425 U.S. 912, 96 S.Ct. 1508, 47 L.Ed.2d 762 (1976); *Dorson v. Dorson,* 393 So.2d 632 (Fla. 4th DCA 1981); *Reed by and through Reed v. U.S.*, 717 F. Supp. 1511 (S.D. Fla. 1988).

In this case, the parties recently consented to magistrate jurisdiction based upon an understanding of the salient issues represented in the *original* JPS. Thereafter, the parties entered into another JPS whereby the Defendants attempt to raise many more issues than what the parties had previously agreed, but still did not raise anything regarding waiver or DOL supervised

settlement of claims. In other words, having been afforded an opportunity to argue why evidence should be admitted over Plaintiffs' objections, Defendants have failed to establish, as a threshold matter, why evidence purporting to support the existence of a DOL supervised waiver should be admitted into evidence in a case where there is no disputed issue of law or fact pertaining to waiver.

The Defendants have either waived the issue or have forfeited it. It is not clear from their Memorandum whether the Defendants maintain that their failure to raise the waiver issue by stipulation or otherwise was intentional or inadvertent. In any event, the distinction between waiver and forfeiture is relevant only to establish which standard applies. *United States v. Olano*, 507 U.S. 725, 733 (1993). Plaintiffs maintain Defendants have waived the issue since they twice intentionally stipulated regarding the issues for trial and never including any waiver issue or DOL supervision. By failing to even address why the Court should entertain an issue that is not raised by stipulation, they again either waive or forfeit the ability to do so and the Court should exclude the evidence as not relevant to any factual or legal issue before the Court.

## II. Defendants elected not to litigate the DOL claims for strategic reasons and they now seek to have their cake and eat it too.

The only DOL document that Defendants have indicated they intend to introduce into evidence is a single Form WH-58. In essence, the Defendants seek to introduce a single document in a vacuum without the benefit of any other documents that would have necessarily been generated in the course of a DOL investigation, if in fact there was one. If there was a DOL investigation, there are many documents that would have been generated by the DOL, including standard forms such as a "WHISARD Compliance Action Report" and a "narrative summary" of the investigation and any findings. This is fundamental. However, Defendants have never produced such documents in the course of discovery and do not list them now in their exhibit list. Defendants' submission suggests that they were subjected to a "intrusive DOL investigation"

which they want to describe in a vacuum. This is because if such an investigation actually took place, Defendants would be in possession of those documents and they would establish the existence of numerous inconvenient issues of fact and law which contradict the positions Defendants have vigorously argued in the course of this litigation and even issues they only recently raised in the last two weeks.

For example, if there was in fact a DOL investigation and an authentically supervised release of any claim, the reports generated by the DOL would establish that Defendants have long known, recognized, and acknowledged that they are an enterprise "engaged in commerce", which is an issue that they exhaustively litigated and forced the Plaintiffs to brief when it was never authentically in dispute. A report from the DOL would certainly have concluded that Ruben Sierra had operational control given that, according to his most recent Declaration, the DOL "required" that he disburse wages and that he sign any and every receipt for payment of wages. The report would also necessarily include the specific findings regarding recordkeeping and would certainly have concluded that there was a failure in this case given that, for a period of at least four or five years, the Defendants paid their employees in cash. The report would also include facts and conclusions regarding whether anyone other than Defendant Sierra could claim an exemption as a management employee. The report would almost certainly contradict Mr. Sierra's Declaration. For example, Mr. Sierra characterizes the investigation as one concerning overtime, but what can be gleaned from the limited records Defendants did keep (particularly during "Phase I") is that they clearly reflect that for a period of years the Defendants did not even use the correct "tip credit" or the correct "reduced minimum wage". Moreover, the report would certainly reflect that in determining whether the correct minimum wage was used, that the minimum wage would have been calculated based upon the highest applicable minimum wage published by the State of

Florida.[6] The report would also indicate whether records of all the employees, included undocumented workers and other "contractors", were investigated. The report would indicate who represented the Defendant at any meetings with the DOL: its owner or his sister-in-law, who Defendants maintain is the only person with operational control of Grill Enterprises, LLC.

### III. There is no admissible evidence of an enforceable waiver of substantive FLSA rights.

The FLSA was enacted for the purpose of protecting workers from substandard wages and oppressive working conditions. *Barrentine v. Arkansas-Best Freight System*, 450 U.S. 728, 101 S.Ct. 1437, 1444, 67 L.Ed.2d 641 (1981). Recognizing that there are often great inequalities in bargaining power between employers and employees, Congress made the FLSA's provisions mandatory; thus, the provisions are not subject to negotiation or bargaining between employers and employees. *Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697, 65 S.Ct. 895, 902, 89 L.Ed. 1296 (1945). "FLSA rights cannot be abridged by contract or otherwise waived because this would 'nullify the purposes' of the statute and thwart the legislative policies it was designed to effectuate." *Barrentine v. Arkansas-Best Freight System*, *supra*, 101 S.Ct. at 1445 (citations omitted). Thus, the FLSA results from "a recognition of the fact that due to the unequal bargaining power as between employer and employee, certain segments of the population required federal compulsory legislation to prevent private contracts" which endanger national health and efficiency. *Brooklyn Sav. Bank v. O'Neil*, *supra*, 324 U.S. at 706, 65 S.Ct. at 902.

It is well settled that a waiver of substantive FLSA rights can only be enforceable under one of two circumstances. The first circumstance is when a settlement is reached between parties litigating claims before a court of competent jurisdiction. Even in the context of litigation between

---

[6] / If there was a DOL investigation, then Defendants would know that the applicable minimum wage is the Florida minimum wage, which would in turn reveal the inconsistency with the position they take now.

represented parties, a settlement of substantive FLSA rights is only enforceable upon a judicial finding that the settlement is a fair compromise of a disputed issue of fact and law. *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352-3 (11th Cir. 1982). The other circumstance where substantive FLSA rights can be compromised arises when the U.S. Secretary of Labor supervises the payment of unpaid wages owed to them. *Id*.

In this case, it is apparent that Defendants hope to introduce Defendants' "Exhibit D28", purporting to be a fully-executed "U.S. Department of Labor Wage and Hour Division Receipt for Payment of Back Wages, Liquidated Damages, Employment Benefits, or Other Compensation" (a/k/a "Form WH-58") without any authenticating DOL witness or document. From the Declaration of Defendant Ruben Sierra, it is also clear that he intends to characterize this form as the product of a settlement of claims supervised by the U.S. Secretary of Labor. He attempts to characterize the nature of the investigation and suggests that the amount supposedly owing was calculated by some unnamed "DOL investigator" who not only calculated the amount owed, but who also "required" that Defendants pay the amounts due, and even delivered "pre-filled forms" to him for purposes of consummating a settlement of claims. Mr. Sierra also suggests that the DOL communicated their "findings" to him and that the investigation pertained to <u>unpaid overtime hours</u>[7]. However, Defendants' Memorandum does not include any declaration by the U.S. Secretary of Labor or any duly designated subordinate thereof. Similarly, Defendants do not list any DOL employee in their trial witness list.

Indeed, Defendants have made clear they intend to introduce no other DOL document whatsoever. Ordinarily, when the DOL conducts an investigation and calculates the wages owing to employees of an employer, they will prepare a companion Form WH-56 ("Summary of Unpaid

---

[7] /   Plaintiff Diaz has never made a claim for payment of overtime wages.

Wages"). However, Defendants do not list a WH-56 Summary of Unpaid Wages on their trial exhibit list. A blank form of Form WH-56 is attached hereto as **Exhibit 3**, for ease of reference. A proper WH-56 would include the identity of the DOL investigator together with a list of employees who are owed wages, the amount of wages owed to each, and a total amount of wages owed to all on the list. Thus, at a bare minimum, a Form WH-58 would have to conform to the amounts represented to be owed to that individual employee in the corresponding WH-56 "Summary of Unpaid Wages". Defendants, however, do not provide any corresponding WH-56 or indicate why Mr. Sierra would be permitted to testify about things he was told by an unnamed DOL investigator. Everything that Mr. Sierra would attribute to "the DOL investigator" is an out-of-Court declaration offered for the truth of the matter asserted and is necessarily inadmissible in accordance with Rules 801 and 802, Fed. R. Evid.

IV.   **Defendants fail to authenticate the single document they seek to have admitted into evidence.**

Admissible evidence must be properly authenticated before it is admitted into evidence. Rule 901, Fed. R. Evid. The proponent of such evidence must produce evidence sufficient to support a finding that the item is what the proponent claims it is. *Id*. The document at issue in this case is a single government documents purporting to be a Form WH-58 <u>waiver resulting from a settlement of claim supervised by the DOL</u>. However, Defendants do not list any DOL custodian or other witness competent to testify as to the authenticity of DOL documents or investigations.

Defendants submit that the single document in question is authentic "because they were received from the DOL". Rule 901(7)(B), Fed. R. Evid. [ECF No. 159, p. 5]. That Rule provides, in pertinent part, as follows:

> Rule 901. Authenticating or Identifying Evidence
>    (7) Evidence About Public Records. Evidence that:
> \* \* \*

> (B) a purported public record or statement is from the office where items of this kind are kept.

Rule 901(7)(B), Fed. R. Evid.

According to the Defendants, they will authenticate the form by proving that it is a "public record or statement [ ] from the office where items of this kind are kept". Again, no DOL witness is listed. Rather, Defendants suggest that they will be able to "cross-examine" Plaintiff Diaz, who would presumably have to testify that the form is a public record, it comes from DOL, and that that is where "this kind [of record] is kept" by the government. Defendants also list Ruben Sierra to testify that he witnessed Plaintiff Diaz sign the document. Defendants also say that they will rely on witness Yeison Gonzalez that he is competent to recognize the signature of Plaintiff Diaz on the document.

There is no evidence to even suggest that any of the alleged authenticators are competent to say a fully-executed Form WH-58 "comes from the DOL". In fact, Defendants do not state how they would prove the authenticity of the document as an actual document of that agency pertaining to a specific DOL investigation. Thus, it appears that Defendants hope to authenticate government documents by testimony of non-government witnesses with an interest in this litigation. Plaintiffs are aware of no authority permitting such authentication of government records.

Notably, government witnesses do not necessarily need to be bothered in order that government records may be properly authenticated. Fed. R. Evid. 902 provides a list of evidence that can be self-authenticating. However, the single document in question does not fall under any category of self-authenticating documents. As the rule on self-authentication pertains to government documents, several categories are listed, but none of them apply to the document in this case. A brief discussion regarding self-authenticating government documents follows.

A. **"Domestic Public Documents That Are Sealed and Signed", Fed. R. Evid. 902(1)**

To fall under this category, a document must include a seal purporting to be that of the government agency whose documents are being proffered into evidence, and the document must include a signature purporting to be an execution or attestation. The document at issue includes neither of the above.

B. *"Domestic Public Documents That Are Not Sealed but Are Signed and Certified",* **Fed. R. Evid. 902(2)**

To fall under this category, the document must bear the signature of an officer or an employee of a government agency whose documents are being introduced into evidence and another public officer who has a seal and official duties with the same indicating that the signer has the official capacity to certify and that the signature is genuine. The document at issue here does not.

C. **"Certified Copies of Public Records***",* **Fed. R. Evid. 902(4)**

To fall under this category, a document must have been first recorded or filed in a public office as authorized by law and then a copy thereof would have to be certified as correct by either the custodian or another person authorized to make the certification, or a certificate that complies with the Rules of Evidence, a federal statute, or a rule prescribed by the U.S. Supreme Court. The document at issue in this case has not been.

It follows that since the Defendants have listed no witness competent to authenticate DOL documents, and since none of the documents are self-authenticating, the Defendants cannot proffer an evidentiary predicate upon which to conclude that government records are what the proponents in this case might claim them to be; they cannot prove DOL-supervision and approval without the DOL.

V.   **Even a properly authenticated and admissible WH-58 is worthless without admissible evidence that the underlying consideration was accepted and negotiated.**

Even a fully-executed and properly authenticated WH-58 is meaningless in the absence of proof that the described consideration was actually negotiated. In support of the idea that Defendants paid Plaintiff Diaz gross back wages in the amount of $133.36 in accordance with the form Defendants provide, they produce a document which is, on its face, "not a check". There is no cancelled check or bank record to memorialize the negotiation of any negotiable instrument. No such document is provided in support of the memorandum or listed as a trial exhibit by Defendants.

VI.  **Even a properly authenticated and admissible WH-58 is worthless if it is uninformed or made under duress.**

As with any other settlement, undue influence in the obtaining of a release would render the agreement illusory. *Woods v. RHA/Tennessee Group Homes, Inc.*, 803 F.Supp.2d 789, 800 (2011). Further, such a settlement, if proven, would be voidable if the employee would made to believe that he was required to accept the settlement or if he had been misinformed regarding the same. *Id*. at 801.

## CONCLUSION

The Defendants do not provide evidence of any DOL calculation or summary of wages due to employees generally or Plaintiff Diaz, specifically. There is no narrative report or other indication the DOL had anything to do with properly determining and calculating the amounts that they concluded Defendants owed to Plaintiff Diaz or anyone else.

Defendants cannot establish that the waiver represents a negotiated settlement undertaken with the supervision and approval of the U.S. Secretary of Labor. No Secretary of Labor or other

DOL designee is listed as a witness, nor do their names appear in the suggested waiver, or anywhere else in any document Defendants hope to introduce.

Because the Defendants fail to provide any legal basis to support the admissibility of government documents, those documents and any testimony regarding a purported DOL supervision and approval must not be admitted into evidence.

## CERTIFICATE OF SERVICE

I hereby certify that on May 4, 2023 a true and correct copy of the foregoing was electronically filed with the Clerk of the Court via CM/ECF and served on the parties listed in the Service List below in the manner indicated therein.

Anthony F. Sanchez, P.A.
Attorneys for Plaintiffs
6701 Sunset Drive, Suite 101
Miami, Florida 33143
Tel.: 305-665-9211

By: /s/ Anthony F. Sanchez
Anthony F. Sanchez
Florida Bar No.789925
afs@laborlawfla.com

## SERVICE LIST

| | |
|---|---|
| Anthony F. Sanchez, Esq. | Todd W. Shulby, Esq. |
| Florida Bar No.: 789925 | Florida Bar No.: 068365 |
| afs@laborlawfla.com | tshulby@shulbylaw.com |
| faz@laborlawfla.com | llangford@shulbylaw.com |
| ***Counsel for Plaintiffs*** | ***Counsel for Defendants*** |
| ANTHONY F. SANCHEZ, P.A. | TODD W. SHULBY, P.A. |
| 6701 Sunset Drive, Suite 101 | 1792 Bell Tower Lane |
| Miami, Florida 33143 | Weston, Florida 33326 |
| Tel: 305-665-9211 | Tel: 954-530-2236 |
| | Fax: 954-530-6628 |
| | *Via Notice of Electronic Filing* |

          Brian H. Pollock, Esq.
          Florida Bar No.: 174742
          brian@fairlawattorney.com
          ***Co-Counsel for Defendants***
          FAIRLAW FIRM
          135 San Lorenzo Avenue, Suite 770
          Coral Gables, Florida 33146
          Tel:  305-230-4884
          *Via Notice of Electronic Filing*