UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:20-CV-22603-GOODMAN [*CONSENT CASE*]

ERIC CHAVEZ, ET AL.,

      Plaintiff,

v.

GRILL ENTERPRISES, LLC AND
RUBEN SIERRA,

      Defendants.

_____/

## DEFENDANTS' MEMORANDUM OF LAW
## REGARDING THE ORDER RE: TRIAL RESCHEDULING, BRIEFING AND
## QUESTIONS

Defendants, Grill Enterprises, LLC and Ruben Sierra, pursuant to the Order Re: Trial

Rescheduling, Briefing and Questions [ECF No. 185] and the Post-Hearing Administrative Order

[ECF No. 190], submit the following Memorandum of Law:

1

1.     **Whether an FMWA pre-suit demand letter is invalid if it seeks damages beyond those available in an FMWA claim?**

**Yes, there is on-point legal authority.** The letter Mr. Chavez claims to have sent to Grill Enterprises, LLC (only) [ECF No. 171-1] is invalid because it failed to strictly comply with Fla. Stat. §448.110(6) by improperly demanding payment of attorneys' fees and liquidated damages in addition to minimum wages. Section 448.110(6), Florida Statutes, specifies that "The notice must identify the minimum wage to which the person aggrieved claims entitlement, the actual or estimated work dates and hours for which payment is sought, and the total amount of alleged unpaid wages through the date of the notice." Mr. Chavez sent a grossly inflated pre-suit minimum wage demand letter that demanded payment of "Unpaid Minimum Wage… Liquidated Damages… Statutory Fees and Costs" for *his* claim under the FMWA. [ECF No. 171-1.] Mr. Chavez improperly included liquidated damages and attorneys' fees that are, by statute, only available after he prevails in litigation. Fla. Stat. §448.110(6)(c) ("**Upon prevailing in an action** brought pursuant to this section, aggrieved persons shall recover the full amount of any unpaid back wages unlawfully withheld plus the same amount as liquidated damages and shall be awarded reasonable attorney's fees and costs") [*emphasis added*.] The plain language of the statute under which he travels in Count II makes clear that liquidated damages and attorneys' fees are only available after "prevailing" in "a civil action in a court of competent jurisdiction." Fla. Stat. §448.110(6)(a) and (c). Consequently, neither liquidated damages nor attorneys' fees are available or included in a pre-suit demand letter.

Section 448.110, Florida Statutes, "…is in derogation of the common law rule that each party is responsible for its own fees." *Pratt v. Weiss*, 161 So. 3d 1268, 1271 (Fla. 2015) (in discussing Fla. Stat. §768.79 and Fla. R. Civ. P. 1.442.) A Florida statute awarding attorneys' fees is in derogation of the common law of Florida and must be "strictly construed." *Royal Palm Vill. Residents,*

*Inc. v. Slider*, 57 F.4th 960, 963 (11th Cir. 2023); *see also Willis Shaw Exp., Inc. v. Hilyer Sod, Inc.*, 849 So. 2d 276, 278 (Fla. 2003) ("statute and rule are in derogation of the common law rule that each party pay its own fees" were required to be "strictly constructed") (*citing Major League Baseball v. Morsani*, 790 So.2d 1071, 1077−78 (Fla.2001) ("[A] statute enacted in derogation of the common law must be strictly construed...."); *Dade County v. Pena*, 664 So.2d 959, 960 (Fla.1995) ("[I]t is also a well-established rule in Florida that 'statutes awarding attorney's fees must be strictly construed.' *Gershuny v. Martin McFall Messenger Anesthesia Professional Ass'n*, 539 So.2d 1131, 1132 (Fla.1989).'"))

Mr. Chavez's FMWA pre-suit demand letter that required Defendants to pay "liquidated damages" and "statutory attorneys' fees and costs" to satisfy his claim was defective. [ECF No. 171-1.]

> **Simply put, liquidated damages and attorneys' fees are only available to a plaintiff who prevails in an action brought under FMWA**. Florida Statute, Section 448.110(6)(c)(1) ("Upon prevailing in an action brought pursuant to this section, aggrieved persons shall recover the full amount of any unpaid back wages unlawfully withheld plus the same amount as liquidated damages and shall be awarded reasonable attorney's fees and costs.") An employer is not required to pay liquidated damages or attorneys' fees when it is tendering all unpaid wages in response to a plaintiff's statutorily mandated pre-suit demand. Therefore, unlike the Fair Labor Standards Act, the FMWA clearly contemplates that an employer who resolves FMWA claims within the prescribed time frame allowed in the statute would not be liable for liquidated damages or attorneys' fees. For these reasons, the undersigned finds that the August 1, 2010, and August 24, 2010 **notices in which plaintiffs sought a lump sum which allegedly represented unpaid minimum wages, liquidated damages and attorneys' fees was improper and violated the provisions of the FMWA**. Accordingly, the undersigned **recommends that Count III of the Amended Complaint be dismissed for failure to comply with the pre-suit notice requirement**. [*Emphasis added.*]

*Johnson v. Nobu Associates S. Beach, LP*, 2011 WL 780028, at *4 (S.D. Fla. Feb. 4, 2011), *report and recommendation adopted*, 2011 WL 772874 (S.D. Fla. Feb. 28, 2011). *Accord Tadili v. Ferber*, 2013 WL 12101132, at *2 (S.D. Fla. Nov. 22, 2013) (Ryskamp, J.) The problem with Mr. Chavez's pre-suit notice letter, like the fatal flaw with the notice letters sent in *Tadili* and *Johnson*, is that it does not

incentivize an employer to make a pre-suit tender of the minimum wages allegedly owed under the FMWA.

In *Johnson*, the plaintiff sent a pre-suit notice requesting damages he was not entitled to under the statute—i.e., liquidated damages and attorneys' fees—and Judge King noted that "permitting counsel to inflate the notice of deficiency would [ ] undercut the statutory intent of the [FMWA]" to properly compensate an employee. *Ferrer v. T K Promotions, Inc.*, 2022 WL 509044, at *2 (S.D. Fla. Jan. 4, 2022) (Martinez, J.) (*quoting Johnson v. Nobu Assoc. S. Beach*, 2011 WL 772874, at *1 (S.D. Fla. Feb. 28, 2011) (King, J.)

Likewise, in *Tadili*, "Plaintiff's pre-suit notice also requests liquidated damages, attorneys' fees and costs." 2013 WL 12101132, at *2. As a result, the Court decided that "Defendants are entitled to summary judgment on the Florida unpaid wages claim due to Plaintiff's defective pre-suit notice." *Id.* "Specifically, the statute requires the aggrieved person to include in the pre-suit notice 'the minimum wage to which the person aggrieved claims entitlement, the actual or estimated work dates and hours for which payment is sought, and the total amount of the alleged unpaid wages through the date of the notice.'" *Acosta v. Del Pino*, 2012 WL 13129961, at *8 (S.D. Fla. May 25, 2012), *report and recommendation adopted sub nom. Acosta v. Rodriguez Del Pino*, 2012 WL 13129958 (S.D. Fla. July 9, 2012) (citing Fla. Stat. § 448.110(6)(a).)

In *Epsilantis v. Scozzari Roof Services Contracting & Consulting Inc.*, 2021 WL 10725013, at *5 (S.D. Fla. Nov. 19, 2021), the Court determined that the FMWA was not unconstitutional or preempted by the FLSA and required the pre-suit notice letter to strictly comply with Fla. Stat. §448.110(6) as a condition precedent to pursuing a claim under the FMWA.

Although there is no case on point from an appellate court in Florida, analogous Florida appellate court decisions require strict compliance with pre-suit conditions precedent imposed by statute. The FMWA is not the only Florida Statute to impose a condition precedent. Section

628.736(10), Florida Statutes imposes specific conditions precedent to filing a PIP lawsuit against an insurer. In finding that an insured's pre-suit demand letter was defective, the Third District Court of Appeal agreed with the Fourth District Court of Appeal that compliance with the statutory condition precedent "requires precision in a demand letter." *Rivera v. State Farm Mut. Auto. Ins. Co.*, 317 So. 3d 197, 205 (Fla. 3d DCA 2021) (*quoting MRI Associates of America, LLC v. State Farm Fire & Casualty Compan*y, 61 So. 3d 462, 465 (Fla. 4th DCA 2011)). Likewise in the context of compliance with the pre-suit requirements imposed by Fla. Stat. §766.106(2), the Florida Supreme Court rejected the argument that strict compliance with the notice provision was not required.

Courts also have found that serving a pre-suit notice letter that demands significantly more in minimum wages then in the lawsuit also undermines invalidates the notice letter. *Cruz v. Trinity Pruf Creations Inc.*, 2015 WL 12743768, at *2 (S.D. Fla. Mar. 12, 2015).

**2.      Whether a defendant must have received the pre-suit, written notice in order for an employee to comply with the pre-suit notice requirements of the FMWA (or is evidence that a plaintiff sent the notice adequate)?**

**Yes, there is on-point statutory authority.** With regard to notice, the FMWA provides as follows:

(6)(a)    Any person aggrieved by a violation of this section may bring a civil action in a court of competent jurisdiction against an employer violating this section or a party violating subsection (5). However, prior to bringing any claim for unpaid minimum wages pursuant to this section, the person aggrieved **shall notify the employer** alleged to have violated this section, in writing, of an intent to initiate such an action. The notice must identify the minimum wage to which the person aggrieved claims entitlement, the actual or estimated work dates and hours for which payment is sought, and the total amount of alleged unpaid wages through the date of the notice.

(b)    The employer shall have 15 calendar days after **receipt** of the notice to pay the total amount of unpaid wages or otherwise resolve the claim to the satisfaction of the person aggrieved. The statute of limitations for bringing an action pursuant to this section shall be tolled during this 15-day period. If the employer fails to pay the total amount of unpaid wages or otherwise resolve the claim to the satisfaction of the person aggrieved, then the person aggrieved may bring a claim for unpaid minimum wages, the terms of which must be consistent with the contents of the notice.

*See* FMWA, Fla. Stat. §448.110(6)(a) and (b)(emphasis added). The plain language of the statute requires that the employer receive actual notice and that the employer be in receipt of the notice. Merely *sending* a notice never received by the employer would not provide that employer with notice.

3. **Whether a court (as opposed to a jury) determines before a jury trial whether the pre-suit written notice was sent and received?**

**No, there is no on-point legal authority.** No rule requires the Court to make a pretrial ruling about whether a plaintiff satisfied the requirement that a pre-suit notice be sent and received. In this case, there appears to be a factual dispute, which would be for the jury to decide unless the Court finds that the plaintiff has no evidence of receipt of the notice (e.g., certified mail receipt signed by the Defendants), in which case the issue could be decided by the Court as a matter of law.

4.   **Whether an opt-in plaintiff needs to send a separate pre-suit demand to pursue an FMWA claim if the initial plaintiff has already sent a pre-suit demand letter?**

   **Yes, there is on-point statutory authority.**

The opt-in procedure is unique to 29 U.S.C. §201, *et seq.* "The plain language of § 216(b) supports that those who opt in become party plaintiffs upon the filing of a consent and that nothing further, including conditional certification, is required." *Mickles on behalf of herself v. Country Club Inc.*, 887 F.3d 1270, 1278 (11th Cir. 2018). Thus, the answer is no found within federal law but within Fla. Stat. §448.110.

Opt-In Plaintiff, Leonel Diaz, is never mentioned in the Amended Complaint. [ECF No. 6.] Therefore, there is no allegation that Mr. Diaz complied with Fla. Stat. §448.110(6) in it. The FMWA specifically requires that any aggrieved employee must notify the employer and provide the employer an opportunity to satisfy the claim before they may bring an action in court. More specifically, the FMWA, Fla. Stat. §448.110(6), provides as follows:

   (6)(a)   **Any person** aggrieved by a violation of this section may bring a civil action in a court of competent jurisdiction against an employer violating this section or a party violating subsection (5). **However, prior to bringing any claim for unpaid minimum wages pursuant to this section, the person aggrieved shall notify the employer alleged to have violated this section, in writing, of an intent to initiate such an action.** The notice must identify the minimum wage to which the person aggrieved claims entitlement, the actual or estimated work dates and hours for which payment is sought, and the total amount of alleged unpaid wages through the date of the notice.

   (b)   The employer shall have 15 calendar days after receipt of the notice to pay the total amount of unpaid wages or otherwise resolve the claim to the satisfaction of the person aggrieved. The statute of limitations for bringing an action pursuant to this section shall be tolled during this 15-day period. If the employer fails to pay the total amount of unpaid wages or otherwise resolve the claim to the satisfaction of the person aggrieved, then the person aggrieved may bring a claim for unpaid minimum wages, the terms of which must be consistent with the contents of the notice.

*See* FMWA, Fla. Stat. §448.110(6)(a) and (b)(emphasis added). The plain language of the statute requires that before "any person" may bring an action, they must provide the employer with notice, in writing, complying with the FMWA's statutory requirements.

5.    **Whether a tip pool is invalidated by the participation of an undocumented co-worker? [In earlier submissions, the parties have cited either immigration law or cases addressing the FLSA's applicability to undocumented plaintiffs. The Court is looking for on-point legal authority on this specific topic involving an undocumented worker other than the plaintiff, not general recitations about the law.]**

      **No, there is no on-point legal authority.** Counsel for the Defendants did not uncover any specific on-point legal authority addressing whether an undocumented worker other than a plaintiff is an "employee" entitled to share in the tip pool without invalidating the tip pool and/or violating the tip credit provisions of the FLSA. However, the most analogous cases are those that analyze and interpret the FLSA's defined term "employee," which word is used both in the context of (1) those workers who can sue for unpaid minimum wages and overtime under the FLSA; and (2) those who can participate in a tip pool. *See* FLSA, 29 U.S.C. §203(b)(2)(A)(ii)(stating that the FLSA permits the "pooling of tips among **employees** who customarily and regularly receive tips")(emphasis added). No cases hold that the word "employee" should be defined differently in each context. There is just one definition of "employee" under the FLSA. The Eleventh Circuit Court of Appeals held that immigration status is irrelevant under the FLSA: "In short, we hold that undocumented workers are 'employees' within the meaning of the FLSA." *Patel v. Quality Inn S.*, 846 F.2d 700, 706 (11th Cir. 1988); *see also Galdames v. N & D Inv. Corp.*, 432 Fed. Appx. 801, 804 (11th Cir. 2011) ("Accordingly, we reiterate that illegal aliens are "employees" covered by the FLSA."); *see also Lamonica v. Safe Hurricane Shutters, Inc.*, 711 F.3d 1299, 1306 (11th Cir. 2013).

**6.      Whether an invalid tip pool, improper tax withholdings, and/or credit card surcharges constitute tip confiscation under the FLSA?**

**No, there is no on-point legal authority.**

Before the March 23, 2018 amendment of 29 U.S.C. §203 to include §203(m)(2)(B)[1], there was no private cause of action for tip confiscation. *Malivuk v. Ameripark, LLC*, 694 Fed. Appx. 705, 708 (11th Cir. 2017) ("Plaintiff's tip-withholding claim implicates neither § 206 (minimum wage) nor § 207 (overtime), and thus Plaintiff cannot assert a private cause of action under § 216(b).") A claim for tip confiscation could only arise *after* the 2018 amendment.

A claim for tip confiscation involves an employer keeping its employee's tips, as defined in 29 U.S.C. §203(m)(2)(B)("An employer may not keep tips received by its employees for any purposes, including allowing managers or supervisors to keep any portion of employees' tips, regardless of whether or not the employer takes a tip credit.") A claim for tip confiscation must be specifically pled, and there is nothing in the case that indicated that the Plaintiffs pursued a claim under the amended version of 29 U.S.C. §216(b), which permits recovery of "all such tips unlawfully kept by the employer…." *Compare Norsoph v. Riverside Resort & Casino, Inc.*, 611 F. Supp. 3d 1058, 1078 (D. Nev. 2020) (finding no cause of action pled for tip confiscation because complaint "does not expressly allege a claim under § 203(m)(2)(B)"), *amended*, 2020 WL 8571839 (D. Nev. May 21, 2020). Tip confiscation as a stand-alone claim was not pled in the Amended Complaint. [ECF No. 7.] Plaintiffs did not allege nor seek recovery of any tips. *Id.*

Invalid Tip Pool

Neither managers nor supervisors can participate in a tip pool. 29 U.S.C. §203(m)(2)(B). Plaintiffs did not allege in the Amended Complaint that they were required to participate in a tip pool that included managers or supervisors, instead alleging that they were

---

[1]      *See* Pub. L. 115-141, 132 Stat. 348, div. S, tit. XII, § 1201 (2018).

required to participate in a tip pool that included "contractors". [ECF No. 7 at ¶14.] The only issue with regard to the "invalid tip pool" for trial is whether the persons who received money from a tip pool were employees or not. *See, e.g.*, *Trahan v. Richard*, 2020 WL 7391954, at *4 (W.D. La. Dec. 16, 2020). The issue is whether the persons who received money from a tip pool were employees within the broad definition from the FLSA, which encompasses anyone within "striking breadth." *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 326 (1992)

<u>Tax Withholdings.</u>

Regarding Phase I, the Plaintiffs argue that employers are not permitted to withhold taxes from their tips if that reduction would reduce the employee's wages below the minimum wage. The law says otherwise at 26 C.F.R. § 31.3102−3, which requires employers to deduct (collect) taxes from the tips paid to employees. Since the Plaintiffs went home with their tips in cash, Defendants could not collect the taxes from their tips and instead properly deducted (collected) the taxes and withholdings from the Plaintiff's hourly wages. What Plaintiffs seek is to have Defendants violate Sections 3402(a)(1), (k) and 3102(c) of the Internal Revenue Code, and other sections[2] by not paying taxes at all, which is an improper ask.

Aside from the absurdity of Plaintiffs' position, if the employer deducted the tax withholdings from the employee's wages and not from their tips, as happened in Phase I in this case, thereby reducing the employee's net wages to zero ($0.00), then there would be no *tip* confiscation, but rather, a *wage* confiscation, at best. Further, if Defendants did not retain the taxes,

---

[2] **29 C.F.R. §531.38 Amounts deducted for taxes.**

Taxes which are assessed against the employee and which are collected by the employer and forwarded to the appropriate governmental agency may be included as "wages" although they do not technically constitute "board, lodging, or other facilities" within the meaning of section 3(m). This principle is applicable to the employee's share of social security and State unemployment insurance taxes, as well as other Federal, State, or local taxes, levies, and assessments. No deduction may be made for any tax or share of a tax which the law requires to be borne by the employer.

and instead remitted those taxes to their payroll company for payment to the federal government and/or to the federal government directly (as was the case in Phase I), then there would be no tip confiscation because the employer did not retain the money.

Credit Card Surcharges

If the credit card surcharges were imposed by the merchants and/or credit card processing companies, the employee would have the burden of proving that the surcharge was deducted from their tips (not their wages) and that the monies were retained by the employer. If proven, then credit card surcharges that were improperly deducted would violate the FLSA but not provide a claim for a return of that portion of the percentage improperly deducted based on the allegations in the Amended Complaint. [ECF No. 7 at ¶14.] First, the Plaintiffs did not plead or allege that Defendants improperly took credit card surcharges from their tips. *Id.* Plaintiffs cannot offer any evidence at trial as to what percentage of credit card surcharges was proper because they did not obtain any discovery on this issue. Consequently, they have no basis to assert a claim for any difference between the amounts charged to Defendants and those charged to Plaintiffs, if any, when the only evidence is that Defendants did not recover more than they were charged for credit card fees. [ECF No. 103 at ¶29; ECF No. 96-3 at ¶13; ECF No. 96-4 at ¶11.]

7.    **On the issue of willfulness, whether an employer is entitled to rely on an investigation of its pay practices conducted by the United States Department of Labor? [The case cited by Defendants as authority for Proposed Jury Instruction No. 48 states that "[E]vidence of the DOL investigation is relevant to the good-faith defense and not outweighed by the risk of prejudice." *Garcia v. J&J, Inc.*, No. 19-CV-60728, 2020 WL 209732, at \*3 (S.D. Fla. Jan. 14, 2020) (emphasis added). It does not stand for the proposition in the proposed jury instruction that: "An employer was not reckless and did not willfully violate the FLSA and is entitled to rely on an investigation of its pay practices conducted by the United States Department of Labor, Wage and Hour Division."]**

      **Yes, there is on-point legal authority.** The issue of willfulness is an issue of fact to be decided by the jury. *Gilbert v. City of Miami Gardens*, 625 Fed. Appx. 370, 372 (11th Cir. 2015) ("Thus, the relevant question in this case is whether, based on the evidence at trial, a reasonable jury could decide that the City failed to make adequate inquiry into whether its payment of Gilbert's wages complied with the FLSA."); *accord Nail v. Shipp*, 2019 WL 3719397, at \*10 (S.D. Ala. Aug. 6, 2019) (defendant entitled to have jury decide whether reliance on DOL's findings after investigation "in an effort to show that any violations were not willful."). Working with the DOL and relying on their findings is sufficient for the Court to determine that any violation was not willful. *Compare Gordon v. TBC Retail Group, Inc.*, 2020 WL 3259394, at \*5 (D.S.C. June 16, 2020) (appropriate limitations period was two years based, in part, on consultation with and an audit by DOL).

8.     **Whether the verdict form should include a special interrogatory asking the jury to determine if an employer is entitled to a tip credit or if the tip pool was valid/invalid (or questions about how the tip pool was invalidated)? Alternatively, if (after conferring) the parties agree that these types of questions do not need to be included in the verdict form, then the parties may state so in their submission.**

**No, but Fed.R.Civ.P. 49, governs the topic.** This practice is permitted by Fed.R.Civ.P. 49. Without the answer to that interrogatory the basis of the jury's determination would be unknown. This is particularly necessary where Plaintiffs recently claimed that the time records do not accurately reflect the hours worked and now, for the first time in this litigation, argue that they are entitled to unpaid minimum wages as a result of unpaid hours and/or time spent working off-the-clock.[3] This is also true given that Plaintiffs have recently indicated that they will argue to the jury that their tips were unlawfully retained by Defendants and that they are entitled to reimbursement of retained tips.[4] In fact, if Plaintiffs are permitted to make these arguments or raise these "topics" during the trial in the jury's presence, additional special interrogatories should be included so that the parties will know the basis of any award by the jury and can pinpoint appealable errors. If the jury is permitted to merely provide a gross award, without any explanation, the parties will not know whether the amount was attributable to

---

[3]     Notably, off-the-clock work was never alleged by Plaintiffs as a basis for relief in the pleadings (ECF No. 1 and 7), nor in Plaintiff's Statement of Claim (ECF No. 8 and 8.1), nor in Plaintiff's responses to interrogatories, in particular Interrogatory 5 requesting detail of Plaintiffs' alleged damages (ECF No. 96.8 (Chavez) and 96.9 (Diaz)), nor in Plaintiff's calculations of their damages (ECF No. 98, 98.9, 98.10 (Chavez) and ECF No. 99, 99.9 and 99.10 (Diaz). Mr. Diaz testified that his time records were correct. [ECF No. 67-1 at 25.] Plaintiffs did not indicate that the accuracy of the time/pay records was an issue in dispute in this case. [ECF No. 144.]

[4]     Plaintiffs never alleged tip retention as a basis for relief in the pleadings (ECF No. 1 and 7), nor in Plaintiff's Statement of Claim (ECF No. 8 and 8.1), nor in Plaintiff's responses to interrogatories, in particular Interrogatory 5 requesting detail of Plaintiffs' alleged damages (ECF No. 96.8 (Chavez) and 96.9 (Diaz)), nor in Plaintiff's calculations of their damages (ECF No. 98, 98.9, 98.10 (Chavez) and ECF No. 99, 99.9 and 99.10 (Diaz).

objectionable arguments made by Plaintiffs' counsel and/or a lack of proper jury instructions by the Court, making an appeal inevitable.

9.      **Whether a plaintiff's damages are calculated by using the date of the lawsuit or the date of the opt-in notice, or the last day of employment?**

**Yes, there is on-point legal authority.**

**Mr. Chavez:**   Mr. Chavez's damages are calculated using the date that he filed the lawsuit, June 23, 2020 [ECF No. 1]. 29 U.S.C. §256(1). "[N]amed plaintiffs commence their civil action upon the filing of their complaint." *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1105 (11th Cir. 1996).

**Mr. Diaz:**   Defendants' position is that the statute of limitations for Mr. Diaz is irrelevant based on his failure to comply with the pre-suit notice provisions of Fla. Stat. §448.110(6) and his having signed a WH-58 Form to waive/release any claim under the FLSA that arose before the pay period ending on March 9, 2021. Those issues aside, Mr. Diaz's damages would have run from the date he filed his opt-in form with the Court on December 9, 2020 [ECF No. 39]. 29 U.S.C. §256(b).

Regardless, nowhere in the Amended Complaint or the Pretrial Stipulation [ECF No. 7,144] have Plaintiffs sought to recover for more than two years before the filing of the Complaint for Mr. Chavez or consent to join for Mr. Diaz, absent a finding of willfulness.

10. **Whether an initial joint pretrial stipulation can be superseded by a later joint pretrial stipulation when a court's operative scheduling order includes a deadline for the later-filed joint pretrial stipulation? In other words, must a party show "manifest injustice" before submitting changes in a later-filed joint pretrial stipulation, when the Court's operative scheduling order includes a deadline for the later-filed joint pretrial stipulation?**

> **Yes, there is on-point legal authority.**

The Eleventh Circuit Court of Appeals recognized that the parties can modify their pre-trial stipulations:

> Thus matters stipulated in the pre-trial order are binding upon the parties absent some modification, *see United States v. Tampa Bay Garden Apartments, Inc.*, 294 F.2d 598 (5th Cir. 1961), and normally cannot be pursued on appeal." *Funding Systems Leasing Corp. v. Pugh*, 530 F.2d 91, 95 (5th Cir. 1976).

*Jackson v. Seaboard Coast Line R. Co.*, 678 F.2d 992, 1016 (11th Cir. 1982). Neither party sought to "amend" its pretrial stipulation but instead filed an updated Pretrial Stipulation based on the Court's Trial Order. [ECF No. 130.] There is no prohibition on filing an updated pretrial stipulation in compliance with an Order from the Court.

The parties initially filed their Joint Pretrial Stipulation on November 8, 2021. [ECF No. 81.] That document was six (6) pages. The parties recently filed their Joint Pretrial Stipulation on April 24, 2023. [ECF No. 144.] That document is over twice as long at fourteen (14) pages.

- The parties went from 1 uncontested fact to 11 uncontested facts. [ECF Nos. 81, 144.] Plaintiffs do not quarrel with the streamlining of these issues.

- The parties went from 12 disputed issues of fact to 28. [ECF Nos. 81, 144.]

- The parties went from 6 disputed issues of law to over 27. [ECF Nos. 81, 144.]

Plaintiffs and Defendants also submitted, as attachments to their Joint Pretrial Stipulation filed on April 24, 2023, drastically different Exhibit Lists. [*Compare* ECF Nos. 81-1 and 82-2 with 144-1, 144-2, 172-1, and 173-1.]

Plaintiffs do not claim that they have been prejudiced in any way based on the inclusion of additional issues in the subsequently-filed Joint Pretrial Stipulation or in their subsequently-filed Exhibit List. In reality, there is no prejudice or surprise to the Plaintiffs because they have always been on notice of the additional issues surrounding the WH-58 Form that Mr. Diaz signed, the flawed pre-suit notice letter they claimed to have sent for Mr. Diaz, and the discrepancy between the FLSA's and the FMWA's minimum wages. *See e.g.*, *McAlister-Jones v. Foote*, 720 Fed. Appx. 971, 975 (11th Cir. 2017) (no error in amending pretrial order because defendant was "on notice" of the issues). Plus, the Plaintiffs participated in filing the updated Pretrial Stipulation that included additional stipulated facts, disputed facts and issues of law, and revised Exhibit lists.

More to the point, the issues of law contained in the joint pretrial stipulations are not binding on the Court:

> In any case, it is well settled that a court is not bound to accept as controlling stipulations as to questions of law. *Swift & Co. v. Hocking Valley R. Co.*, 243 U.S. 281, 289, 37 S.Ct. 287, 61 L.Ed. 722 (1917); *United States v. Waterman Steamship Corp.*, 397 F.2d 577, 579 (5 Cir. 1968). Since entitlement to attorneys fees is a question of law, *see Kessler v. Pennsylvania Nat. Mut. Cas. Ins. Co.*, 531 F.2d 248, 255 n. 30 (5 Cir. 1976), the parties' stipulation was not binding on the district court, if contrary to Florida law.

*Equitable Life Assur. Soc. of U.S. v. MacGill*, 551 F.2d 978, 983 (5th Cir. 1977).

11.     Is "unclean hands" an affirmative defense in an action for damages (as opposed to a defense when the Court is sitting in equity, such as in connection with a motion for injunctive relief)?

Yes, there is on-point legal authority.

The Eleventh Circuit imposes two requirements to advance the affirmative defense of unclean hands:

> For a defendant to successfully avail itself of the doctrine of unclean hands, it must satisfy two requirements. *451 First, the defendant must demonstrate that the plaintiff's wrongdoing is directly related to the claim against which it is asserted. *Keystone Driller Co. v. General Excavator Co.*, 290 U.S. 240, 245, 54 S.Ct. 146, 147–48, 78 L.Ed. 293 (1933). Second, even if directly related, the plaintiff's wrongdoing does not bar relief unless the defendant can show that it was personally injured by her conduct. *Mitchell Bros. Film Group v. Cinema Adult Theater,* 604 F.2d 852, 863 (5th Cir.1979), *cert. denied,* 445 U.S. 917, 100 S.Ct. 1277, 63 L.Ed.2d 601 (1980).

> *Calloway v. Partners Nat. Health Plans*, 986 F.2d 446, 450–51 (11th Cir. 1993). Courts within

this Circuit routinely determine that "unclean hands can be raised as a defense" to FLSA claims.

*See e.g.*, *Dionisio v. Ultimate Images & Designs, Inc.*, 391 F. Supp. 3d 1187, 1196 (S.D. Fla. 2019); and

*McGlothan v. Walmart Stores, Inc.*, 2006 WL 1679592, at *3 (M.D. Fla. June 14, 2006) ("The defense

of unclean hands, therefore, is valid.")

12.   **Did Plaintiffs timely seek a claim for tip confiscation and, if not, what impact does that have on their damages claim?**

**No, and there is on-point legal authority.** The Plaintiffs did not allege that they are entitled to a disgorgement of the tips they claim Defendants confiscated in the Amended Complaint. [ECF No. 7.] In Count I, Mr. Chavez repeatedly refers to a claim for "a minimum wage" and, in the *ad damnum* clause, seeks recovery of "all unpaid minimum wages" under the FLSA. *Id.* Nowhere in the Amended Complaint did Mr. Chavez allege a violation of 29 U.S.C. §203(m)(2)(B) or a claim for tip confiscation under §216(b), as he specifically and only alleged recovery under the minimum wage provisions of the FLSA.

The FLSA, at 29 U.S.C. §216(b) distinguishes between claims for unpaid minimum wages and claims for tip confiscation. The cause of action for alleged minimum wage and overtime violations is stated as follows:

> Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their **unpaid minimum wages**, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages.

29 U.S.C. § 216(b) [*emphasis added*]. The cause of action for alleged tip retention violations is separately stated as follows:

> **Any employer who violates section 203(m)(2)(B)** of this title shall be liable to the employee or employees affected **in the amount of the sum of any tip credit taken by the employer and all such tips unlawfully kept by the employer**, and in an additional equal amount as liquidated damages.

29 U.S.C. § 216(b) [*emphasis added*]. It is clear from the above-quoted sections of the FLSA that an alleged minimum wage violation is distinct from a cause of action to recover "tips unlawfully kept by the employer." *Rodriguez v. City Buffet Mongolian Barbeque, Inc.*, 2020 WL 2476043 (M.D. Fla. 2020) (analyzing separate tip confiscation claim after post-2018 amendment to FLSA).

Not only did Plaintiffs fail to allege a claim for tip confiscation, but Congress did not permit a claim for tip confiscation before enacting §203(m)(2)(B) and amending §216(b) on March 23, 2020. *See e.g.*, *Rodriguez v. City Buffet Mongolian Barbeque, Inc.*, 2020 WL 2476043, at \*5 (M.D. Fla. Apr. 22, 2020) ("I find no reason based on the record before me to conclude that the right to sue for wrongfully withheld tips should be applied to any tips to which Rodriguez claims entitlement prior to March 23, 2018"), *report and recommendation adopted*, 2020 WL 2473452 (M.D. Fla. May 13, 2020); *accord Williams v. Sake Hibachi Sushi & Bar Inc.*, 574 F. Supp. 3d 395, 407 (N.D. Tex. 2021), *appeal dismissed*, 2022 WL 2337672 (5th Cir. Mar. 16, 2022).

Before the amendment of the FLSA on March 23, 2018, the FLSA provided no remedy to recover tips improperly retained. *Malivuk v. Ameripark, LLC*, 694 Fed. Appx. 705, 709 (11th Cir. 2017). The Fifth Circuit agreed that the FLSA did not provide a cause of action to recover tips improperly retained by an employer before the amendment. *Gurule v. Land Guardian, Inc.*, 912 F.3d 252, 257 (5th Cir. 2018). Accordingly, Plaintiffs could not have sought to recover tips they claim to have been improperly distributed because they failed to seek to recover them in the Amended Complaint, in the *ad damnum* clause, and because they never identified any tips they apparently now claim in any of the discovery responses they provided.

Plaintiffs did not include confiscated tips as part of their damages at any point during this case. In Plaintiff's Statement of Claim (ECF No. 8 and 8.1), Plaintiffs did not include retained tips as part of their damages in this case.[5] In response to Defendants' interrogatories, Plaintiffs did not state that retained tips were part of their damages in the case. As to Chavez:

**Interrogatory 5 to Chavez:**

---

[5] Pursuant to the Court's FLSA Order (ECF No. 5), "To assist the Court in the management of the case, the Plaintiff is **ORDERED** to file with the Court a statement of claim setting forth the amount of the alleged unpaid wages, the calculation of such wages, and the nature of the wages (*e.g.* overtime or regular) *within 21 days from the date of this Order*."

Please state each item of damages that you claim, whether as an affirmative claim or a setoff, and include in your answer: the count or defense to which the item of damages relates; the category into which the item of damages falls, i.e. general damages, special or consequential damages (such as lost profits), interest, and any other relevant categories; the factual basis for each item of damages; and an explanation of how you computed each item of damages, including any mathematical formula used.

**Answer of Chavez:**

My calculation estimate is attached as Exhibit" l ", and is based upon pay and time records produced to date by the Defendants, and my own recollection and estimate and inferences made therefrom.

For the period before approximately January 2019, I received no compensation from the employers, as I subsisted only upon gratuities provided by customers of the restaurant, for the period beginning in January 2019, I received a below minimum wage rate of hourly pay, although there is no applicable exception to the employers' obligation to pay the required minimum wage rate.

*See* ECF No. 96.8 (Chavez Responses to Interrogatories).

As to Diaz:

**Interrogatory 5 to Diaz:**

Please state each item of damages that you claim, whether as an affirmative claim or a setoff, and include in your answer: the count or defense to which the item of damages relates; the category into which the item of damages falls, i.e. general damages, special or consequential damages (such as lost profits), interest, and any other relevant categories; the factual basis for each item of damages; and an explanation of how you computed each item of damages, including any mathematical formula used.

**Answer of Diaz:**

I am unable to specifically calculate damages without the pay and time records requested in my request for production of documents.

For the period before approximately January 2019, I received no compensation from the employers, as I subsisted only upon gratuities provided by customers of the restaurant, for the period beginning in January 2019, I received a below minimum wage rate of hourly pay, although there is no applicable exception to the employers' obligation to pay the required minimum wage rate.

*See* ECF No. 96.9 (Diaz Answers to Interrogatories).

Aside from the failure to identify tip retention in the Statement of Claim and during discovery, it is also notable that when the Plaintiffs calculated their damages in this case and

provided the same to the Court, they never included retained tips as part of their alleged damages and calculations. [*See* ECF Nos. 98 at ¶54 (Chavez's calculation of damages) 99 at ¶52 (Diaz's calculation of damages)]; [*see also* ECF Nos. 98-9 and 98-10 (Chavez calculation of damages) and ECF Nos. 99-9 and 99-10 (Diaz calculation of damages).]

Finally, the Plaintiffs did not identify "confiscated tips" in the Joint Pretrial Stipulation as part of the damages they seek to recover. [ECF No. 144.]

Plain and simple, this case has always been about whether Defendant was entitled to take the tip credit. Nothing more and nothing less. The Plaintiffs' eleventh-hour attempt to create chaos and potentially increase their damages is undermined by pleadings, the discovery, and the years of litigation preceding their instant efforts to capitalize on the disjointed procedural posture of this case.

Respectfully submitted this 12th day of June 2023.

/s/ Todd W. Shulby, Esq.
Todd W. Shulby, Esq. (068365)
Todd W. Shulby, P.A.
1792 Bell Tower Lane
Weston, FL 33326
Telephone: (954) 530-2236
E-mail: tshulby@shulbylaw.com
Co-Counsel for Defendants

/s/ Brian H. Pollock, Esq.
Brian H. Pollock, Esq. (174742)
FairLaw Firm
135 San Lorenzo Avenue
Suite 770
Coral Gables, FL 33146
Telephone: (305) 230-4884E-mail:
brian@fairlawattorney.com
Co-Counsel for Defendants